IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| Arnold Davis, on behalf of himself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br>　　vs.<br><br>Guam, Guam Election Commission, Alice M. Taijeron, Martha C. Ruth, Joseph F. Mesa, Johnny P. Taitano, Joshua F. Renorio, Donald I. Weakley, and Leonardo M. Rapadas,<br><br>　　　　　　Defendants. | CIVIL CASE NO. 11-00035<br><br>**ORDER** |

The court accepts and adopts the Magistrate Judge's Report and Recommendation dated June 14, 2012 (ECF No. 44), and **GRANTS** the Defendants' Motion to Dismiss.

**I. CASE OVERVIEW**

This is a civil rights action which deals with the topic of self-determination of the political status of the island and who should have the right to vote on a referendum concerning such. The Plaintiff claims that he is prohibited from registering to vote on the referendum, which is a violation of his Fourteenth and Fifteen Amendment rights as well as a violation of the Organic Act and the Voting Rights Act.

**A. Factual Background**

1

The following facts are taken as established for the purpose of this motion.[1] On November 22, 2011, Plaintiff filed his complaint for declaratory and injunctive relief. *See* Compl., ECF No. 1. In the complaint, he alleges discrimination in the voting process by Guam and the Defendants. *Id.* Plaintiff alleges that under Guam law, a 'Political Status Plebiscite' is to be held concerning Guam's future relationship with the United States.[2] *Id.,* ¶8. Plaintiff, a white, non-Chamorro, male and resident of Guam, states that he applied to vote for the plebiscite but was not permitted to do so because he did not meet the definition of "Native Inhabitant of Guam." "Native Inhabitants of Guam" are defined as "those persons who became U.S. Citizens by virtue of the authority and enactment of the 1950 Organic Act of Guam and descendants of those persons." 1 Guam Code Ann. § 2102, *id.,* ¶¶ 20 and 21.

The Guam Legislature established a "Guam Decolonization Registry" for the "purpose of registering and recording the names of the Native Inhabitants of Guam." 3 Guam Code Ann. §

---

[1] For purposes of the motion to dismiss, the court recounts the facts as alleged in the Plaintiff's Complaint and assumes their veracity for the limited purposes of deciding the motion. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

[2] **Plebiscite Date and Voting Ballot.**

(a) The Guam Election Commission shall conduct a "Political Status Plebiscite", at which the following question, which shall be printed in both English and Chamorro, shall be asked of the eligible voters:

> In recognition of your right to self-determination, which of the following political status options do you favor? (Mark ONLY ONE):
>
> 1. Independence ( )
> 2. Free Association with the United States of America ( )
> 3. Statehood ( ).

Person eligible to vote shall include those persons designated as Native Inhabitants of Guam, as defined within this Chapter of the Guam Code Annotated, who are eighteen (18) years of age or older on the date of the "Political Status Plebiscite" and are registered voters on Guam.

The "Political Status Plebiscite" mandated in Subsection (a) of this Section shall be held on a date of the General Election at which seventy percent (70%) of the eligible voters, pursuant to this Chapter, have been registered as determined by the Guam Election Commission.

1 Guam Code. Ann. § 2110.

2

21001(d); *see* Compl., ECF No. 1, ¶ 17.  The law further provides "[a]ny person who willfully causes, procures or allows that person, or any person, to be registered with the Guam Decolonization Registry, while knowing that the person, or other person, is not entitled to register with the Guam Decolonization Registry, shall be guilty of perjury as a misdemeanor." 3 Guam Code. Ann. § 21009.  The plebiscite would ask native inhabitants which of the three political status options they preferred. The three choices are Independence, Free Association with the United States, and Statehood.  *See* Compl., ECF No. 1*, ¶ 8.*

Because the Plaintiff was denied the right to register for the plebiscite, the Plaintiff filed the instant complaint, stating three causes of action. In his first cause of action, he alleges that by limiting the right to vote in the Political Status Plebiscite to only Native Inhabitants of Guam, the purpose and effect of the act was to exclude him and most non-Chamorros from voting therein, thereby resulting in a denial or abridgment of the rights of citizens of the United States to vote on account of race, color, or national origin, a violation of Section 2 of the Voting Rights Act of 1965.

In his second cause of action, Plaintiff alleges that Defendants are preventing him from registering to vote in the Political Status Plebiscite because he is not a Native Inhabitant of Guam.  Thus, Defendants are engaged in discrimination on the basis of race, color, and/or national origin in violation of various laws of the United States.

Lastly, the Plaintiff's third cause of action alleges that he is being discriminated in relation to his fundamental right to vote in the plebiscite in violation of the Organic Act of Guam, the U.S. Constitution and other laws of the United States for the reason that he is not a native inhabitant of Guam.

In his Prayer for Relief, Plaintiff seeks a judgment: enjoining Defendants from preventing Plaintiff and those similarly situated from registering for and voting in the Political Status

3

Plebiscite; enjoining the Defendants from using the Guam Decolonization Registry in determining who is eligible to vote in the plebiscite; enjoining enforcement of the criminal law provisions of the Act that make it a crime to register or allow a person to vote in the plebiscite who is not a Native Inhabitant of Guam; and a declaration that Defendants' conduct has been and would be, if continued, a violation of law.

### B. Statutory History of the Plebiscite Vote

The Magistrate Judge's recitation of the statutory history of the plebiscite is set forth herein since there is no objection to his representations of fact.

The current plebiscite law traces its beginnings to P.L. 23-130, which became law on December 30, 1996. Therein, the Guam Legislature established a Chamorro Registry for the purpose of establishing an index of names by the Guam Election Commission for registering Chamorros and recording their names. The Registry was to serve as a tool to educate Chamorros about their status as an indigenous people and their inalienable right to self-determination. A week after the passage of the above referenced law, the Guam Legislature passed P.L. 23-147. This new law created the Commission on Decolonization for the implementation and Exercise of Chamorro Self-Determination ("Commission on Decolonization"). The purpose of the Commission was to ascertain the desires of the Chamorro people of Guam as it pertained to their future political relationship with the United States. The law required the Guam Election Commission to conduct a Political Status Plebiscite at the next Primary Election (September, 1998) during which qualified voters would be asked to choose among three political status options. The status options were Independence, Free Association, and Statehood. The results of the plebiscite were to be transmitted to the President and Congress of the United States and the Secretary General of the United Nations.

Seeing that no plebiscite vote occurred during the primary election in 1998, the Guam Legislature passed P.L. 25-106 to have the plebiscite vote take place on July 1, 2000. The Act more importantly changed those persons entitled to vote during the Political Status Plebiscite from "Chamorros" to "Native Inhabitants of Guam". A native inhabitant was defined as a person who became a citizen by virtue of the 1950 Organic Act of Guam and a descendant of such person.

P.L. 25-106 also created a Guam Decolonization Registry. It was a registry separate and apart from the Chamorro registry. The Decolonization Registry was to create a list of qualified voters for the plebiscite. Thus, every person who was a native inhabitant of Guam as defined in the Act was entitled to register with the Decolonization Registry.

Four years after passage of the Guam Decolonization Registry and seeing that a plebiscite vote had still not taken place, the Guam Legislature passed P.L. 27-106 on September 30, 2004. This Act provided that the Political Status Plebiscite shall be held on a general election at which seventy percent (70%) of eligible voters have been registered as determined by the Guam Election Commission.

**C. Procedural History**

On November 22, 2011, Plaintiff filed his complaint herein. *See* Compl., ECF No. 1. On December 2, 2011, the Attorney General of Guam, Leonardo M. Rapadas, a named Defendant, on behalf of himself and all named defendants, moved to dismiss the complaint on the ground that it failed to present a case or controversy. *See* Def.s' Mot., ECF No. 17.

On December 30, 2011, Anne Perez Hattori ("Ms. Hattori"), filed a Motion for Leave to file a brief, as *Amicus Curiae*, in support of Defendants' Motion to Dismiss. *See* Mot., ECF No. 20.

On January 3, 2012, Plaintiff filed his opposition to Defendant's Motion to Dismiss and

5

Case 1:11-cv-00035   Document 78   Filed 01/09/13   Page 5 of 17

on January 7, 2012, he filed an opposition to Ms. Hattori's Motion for Leave to file an *Amicus Curiae* brief. *See* Pl.'s Opp'n, ECF No. 21 and Pl.'s Opp'n, ECF No. 23.

On February 1, 2012, Defendants' Motion to Dismiss was referred by the undersigned to the Magistrate Judge for a Report and Recommendation. *See* Order, ECF No. 25.

On April 6, 2012, the court granted Ms. Hattori's motion for leave to file a brief, as *Amicus Curiae*. *See* Order, ECF No. 41.

On June 14, 2012, the Magistrate Judge issued his Report and Recommendation ("Report"). *See* Rpt. and Rec., ECF No. 44. Therein, the Magistrate Judge recommended the Plaintiff's Complaint be dismissed because the Plaintiff lacks standing and the case is not ripe for adjudication.

The Plaintiff filed his objections to the United States Magistrate's Report and Recommendation on July 1, 2012. *See* Pl.'s Obj., ECF No. 46. The Defendants filed their Response to the Plaintiff's objections to the Report on July 16, 2012. *See* Def.s' Response. ECF No. 47.

On September 21, 2012, the court ordered the Defendants to file a responsive pleading, specifically addressing the applicability of *John Davis, Jr. v. Commonwealth Election Committee*, Case No. 12-CV-00001, 2012 WL 2411252 (D.N.M.I. June 26, 2012). *See* Order, ECF No. 69.

A hearing on the Plaintiff's objections to the Report was held on November 15, 2012.

**II. JURISDICTION AND VENUE**

The court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 for Plaintiff's claims under 28 U.S.C. § 1343 and 48 U.S.C. § 1424(b).

Venue is proper in this judicial district, the District of Guam, because Plaintiff and Defendants reside on Guam, and because all of the events or omissions giving rise to Plaintiff's

6

Case 1:11-cv-00035   Document 78   Filed 01/09/13   Page 6 of 17

claims occurred here. *See* 28 U.S.C. § 1391.

**III. STANDARD OF REVIEW**

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991); *see also* FED.R.CIV.P. 72(b)(3) (stating "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* FED.R.CIV.P. 72(b)(3) (stating a district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions").

A district court's obligation to make a *de novo* determination of properly contested portions of a magistrate judge's report and recommendation does not require that the judge conduct a de novo hearing on the matter. *United States v. Raddatz*, 447 U.S. 667, 676 (1980). Accordingly, the court makes a *de novo* review to those portions of the Report and Recommendation in which the Plaintiff has lodged objections.

**IV. APPLICABLE STANDARD FOR MOTION TO DISMISS**

The Defendants argue that this court has no jurisdiction to hear this action under Rule 12(b)(1) because the Plaintiff lacks standing and the matter is not ripe for review.[3] Standing and ripeness are legal issues subject to *de novo* review. *Bruce v. United States*, 759 F.2d 755, 758 (9th Cir. 1985).

---

[3] The Defendants also move for dismissal under Civil Procedure Rule 12(b)(6). However, the court need not address that particular argument, in light of this court's ruling concerning its lack of subject matter jurisdiction.

7

**V. DISCUSSION**

The Defendants moved to dismiss the Plaintiff's complaint arguing that there was no case or controversy before the court. In the *amicus curiae* brief Ms. Hatorri argued that there was no standing and the case was not ripe. The Magistrate Judge agreed with Ms. Hattori and found the Plaintiff's claims were not ripe for adjudication. He recommended dismissal of the Plaintiff's Complaint for the following reasons:

> 1. Plaintiff's complaint which seeks to enjoin Defendants from preventing him from registering and voting in the 'Political Status Plebiscite' on a general election presents no case or controversy since the matter is not ripe for adjudication. There is no plebiscite vote set in the 2012 general election and no plebiscite vote to date is in sight. Plaintiff's allegations present no sufficient immediacy and reality to warrant intervention by the court.
>
> 2. Plaintiff has no standing to bring an action to enjoin the Attorney General from enforcing the provisions of the plebiscite law that makes it a misdemeanor to register or allow anyone to register with the Guam Decolonization Registry if the person were not a Native Inhabitant of Guam. Plaintiff has not alleged that he has been charged with any crime in relation to the Political Status Plebiscite act nor has he shown that he is subject to a genuine threat of imminent prosecution in relation to the said act.

*See* Rpt. and Rec., ECF No. 44, at 9:20-10:4.

The Plaintiff objects to the Magistrate Judge's findings and conclusions which are now before this court for consideration.

**A. No Opportunity to be heard on ripeness issue**.

First, the Plaintiff objects to the fact that he was not given an opportunity to be heard on the ripeness arguments, which were raised for the first time in the amicus brief. As noted above, the Defendants filed their Motion to Dismiss on December 2, 2011. *See* Mot., ECF No. 17. Therein, they did not raise the issue of ripeness. *Id.*

On the last day for the filing of the Plaintiff's opposition to the motion– December 30, 2011, a Motion for Leave to File an *amicus curiae* brief was filed by Ms. Hattori supporting

8

dismissal based upon a ripeness argument. *See* Mot., ECF No. 20. On April 6, 2012, the Magistrate Judge granted leave to the amicus to file the brief containing the ripeness arguments. However, there was no provision in the Magistrate Judge's order permitting the Plaintiff to file an opposition, nor was a hearing scheduled to hear argument on the matter.

The Government argues that the Plaintiff should not be found wanting in this regard. "First, 'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.' Moreover, courts … have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002); also citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). "[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (citations omitted).

It is probably true that the Plaintiff should have been given an opportunity to be heard at the time the matter was before the Magistrate Judge. Yet, because the Plaintiff actually addresses the issue of ripeness in his objections to the Report, he has now been given an opportunity, such that, this court can rule on the matter without need for additional briefing.

**B. Article III**

Article III of the United States Constitution requires that those who seek to invoke the power of the federal courts must allege an actual case or controversy. *See* U.S. CONST. art. III; *see also Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (*citing Flast v. Cohen*, 392 U.S. 83, 94–101 (1968)). Subsumed within this restriction are two components. *Colwell v. Dep't of Health*

9

*& Human Servs.*, 558 F.3d 1112, 1121-23 (9th Cir. 2009). "Standing and ripeness present the threshold jurisdictional question of whether a court may consider the merits of a dispute." *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006). "Both standing and ripeness originate from the Constitution's Article III requirement that the jurisdiction of federal courts be limited to actual cases and controversies." *Id*. at 1204-05.

"The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, *inter alia*, that plaintiffs have standing and that claims be 'ripe' for adjudication … Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication. The related doctrine of ripeness is a means by which federal courts may dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010) (citations omitted). "The standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction. The ripeness question is whether the harm asserted has matured sufficiently to warrant judicial intervention. Both questions bear close affinity to one another." *Immigrant Assistance Project of Los Angeles County Federation of Labor (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 859 (9th Cir. 2002) (quotation marks, editorial brackets and citations omitted). *See also, City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1172 n.6 (9th Cir. 2001) (noting that standing "overlaps substantially" with ripeness and that in that case, both were "inextricably linked").

### 1. Standing

The standing dispute in this case is entirely over whether the Plaintiff is in-fact injured because he cannot *register* to vote in a plebiscite that may, in fact, never be held. In order for a plaintiff to demonstrate standing for injunctive and declaratory relief:

10

> [A] plaintiff must show that he [or she] is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Institute,* 129 S. Ct. 1142, 1149 (2009) (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

A plaintiff must demonstrate "a real and immediate threat that he would again" suffer the injury to have standing for prospective equitable relief. *Lyons*, 461 U.S. at 105. The "mere physical or theoretical possibility" of a challenged action again affecting a plaintiff is not sufficient. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). It is necessary that there be a "reasonable expectation" or a "demonstrated probability" that the same controversy will recur involving the plaintiff. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

> To establish Article III standing, a plaintiff must show *inter-alia* that he faces imminent injury on account of the defendant's conduct. Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects. Nor does speculation or "subjective apprehension" about future harm support standing. Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a "real or immediate threat . . . that he will again be wronged in a similar way."

*Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citations omitted).

In order to establish an injury in fact necessary to a claim for injunctive relief, the moving party must demonstrate that a defendant's conduct is causing irreparable harm. *Levin v. Harleston*, 966 F.2d 85, 90 (2d Cir. 1992). This requirement cannot be met absent a showing of a real or immediate threat that the plaintiff will be wronged again. *Lyon*, 461 U.S. at 101. While past wrongs consist of evidence bearing on whether there is a real and immediate threat of repeated injury, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse

11

effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Thus, "there must be sufficient immediacy, reality and causality between defendants' conduct and plaintiffs' allegations of future injury" to warrant injunctive relief. *Weiser v. Koch*, 632 F.Supp. 1369, 1373 (S.D.N.Y. 1986).

Examining the facts of the case it is clear there is no on-going, real and immediate threat of repeated injury sufficient to confer standing for injunctive relief. Plaintiff has not successfully argued nor has he shown that he is presently threatened with or has already suffered any irreparable damage or injury because he cannot register for a plebiscite that is more likely than not to occur. *See Benoit v. Gardner*, 345 F.2d 792, 793 (1965) ("There must, at the least, be a strong showing of a likelihood of success and of irreparable harm."). A purely hypothetical threat to federally protected rights does not afford a basis for injunctive relief nor does it raise before the court a justiciable controversy. *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 90 (1947).

The Magistrate Judge also found the Plaintiff lacked standing to challenge the enforcement of 3 GCA § 20009 which makes it a crime to register or allow a person to register with the Guam Decolonization Registry, who is not a Native Inhabitant of Guam. That section of the Guam code makes it a misdemeanor for anyone who "willfully causes, procures or allows" any person "to be registered with the Guam Decolonization Registry, while knowing that the person . . . is not entitled to register" with the Decolonization Registry. 3 Guam Code. Ann. § 21009.

The Plaintiff "must demonstrate a genuine threat that the allegedly unconstitutional law is about to be enforced against him." *Stoianof v. State of Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983). "A plaintiff must do more than merely allege imminent harm sufficient to establish standing, he or she must demonstrate immediate threatened injury as a prerequisite to

12

preliminary injunctive relief." *Associated General Contractors of California, Inc. v. Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).

The Magistrate Judge found the Plaintiff had not been charged with a misdemeanor, nor had he shown that he is subject to a genuine threat of imminent prosecution. *See Wolfson v. Brammer*, 616 F. 3d 1045, 1058 (9th Cir. 2010), quoting *San Diego Cnty. Gun rights Comm. v. Reno*, 98 F. 3d 1121, 1126 (9th Cir. 1996). In evaluating threats of imminent prosecution, the court considers: (1) whether plaintiff has articulated a concrete plan to violate the law in question; (2) whether prosecuting authorities have communicated a specific warning or threat to initiate proceedings; and (3) whether the past history of past prosecution or enforcement under the challenged statute suggests that prosecution may, in fact, be imminent. *Id.* While the Plaintiff may believe there is a possibility of prosecution, that remains speculative at best. A general threat of prosecution is not enough to confer standing. *See e.g. Poe v. Ullman*, 367 U.S. 497, 501 (1961) (mere allegation that state attorney intended to prosecute any offense against the local law held insufficient to confer standing).

In addition, the Plaintiff's inability to point to any history of prosecutions undercuts his argument that he faces a genuine threat of prosecution. *See Rincon Band of Mission Indians v. County of San Diego*, 495 F.2d 1, 4 (9th Cir. 1974) (no standing where the record did not reveal there had been a history of prosecution under the county ordinance); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) (no standing where plaintiffs failed to allege that the challenged statute had ever been applied or threatened to apply). At most, the Plaintiff speculates that there is the possibility of prosecution. Because the Plaintiff has not sufficiently alleged how the Defendants will immediately harm him, this court hereby overrules the Plaintiff's objection and affirms the Magistrate Judge's report and recommendation on this issue.

**2. Ripeness**

13

The question of timing turns on the jurisdictional doctrine of ripeness. "The 'basic rationale' for the ripeness doctrine 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements' over policy with other branches of the federal government." *Hillblom v. United States*, 896 F.2d 426, 430 (9th Cir. 1990), citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).

Ripeness often overlaps with standing, "most notably in the shared requirement that the injury be imminent rather than conjectural or hypothetical." *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir. 2006). As is often the case "sorting out where standing ends and ripeness begins is not an easy task." *See Thomas v. Anchorage Equal Rights Comm'n,*, 220 F.3d 1134, 1138-39 (9th Cir. 2000). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed, may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation marks omitted). "Two considerations predominate the ripeness analysis: (1) "the hardship to the parties of withholding court consideration" and (2) "the fitness of the issues for judicial decision." *Abbott Labs.*, 387 U.S. at 149. "To meet the hardship requirement, a party must show that withholding judicial review would result in direct and immediate hardship and would entail more than possible financial loss." *Dietary Supplemental Coalition, Inc. v. Sullivan*, 978 F.2d 560, 562 (9th Cir. 1992). The Supreme Court has long since held that where the enforcement of a statute is certain, a preenforcement challenge will not be rejected on ripeness grounds. *See Holder v. Humanitarian Law Project*, 130 S.Ct. 2705, 2717 (2010).

The Defendants argue that the Plaintiff, himself, admits that the controversy as presented is not ripe. The Defendants rely on an article written by the Plaintiff which was published in the *Marianas Variety* titled, "Getting Out the Vote." *See* Defs' Resp., ECF No. 47, Attachment. In the article, the Plaintiff states:

14

> With regard to the actual goal involved – the plebiscite itself, the end of the self-determination rainbow, as it were – near-term optimism has given way to financial and other realities. Hope for a plebiscite as early as 2012 has now faded to 2016 or beyond. Funding isn't the only problem, either. Guam law requires registration of "70% of eligible voters" before a political status plebiscite can occur. Of course nobody knows what that figure actually is, as it changes daily. Senator Pangelinan is responsible for that particular bit of whimsical fluff.
>
> A while ago I compared the growth rate of signatures on the Decolonization Registry to the timeline since the Registry was created. Even with a newly-enacted law that automatically adds everyone who qualifies for a CLTC lease it looks like they have a tough row to hoe. I suspect that most of those automatically registered are blissfully unaware they were signed up by proxy.
>
> I compute a high probability of reaching the 70% level sometime early in the 25th century. Even that may be a bit optimistic however, because it's become apparent that virtually all the eligibles who wished to sign – or were signed up automatically by their friends at the Guam Election Commission – have already done so.
>
> Meanwhile, due at least partly to Guam's standing as the undisputed champion in national birth rate statistics (with Utah a distant second) the number of 'Native Inhabitants' reaching voting age annually exceeds the number signing up to vote. It looks like they're actually losing ground in the struggle to reach that magical 70%.
>
> It's time to regroup, I suppose, or the plebiscite will forever be an alluring mirage out there on the horizon. I believe we can expect a change to eliminate the 70% requirement or reduce it to something like, say, 10%, which is approximately where they stand at the moment. They should probably do it soon, because that number gets smaller every day.

*Id.*

Ordinarily, the court should pay little attention to an editorial in a periodical. However, the court considers the opinion voiced by the Plaintiff, in that the historical facts support the conclusion that the plebiscite is not likely to occur any time soon, or if at all. There is little likelihood that the plebiscite will be scheduled any time in the near future.

Because of the similarities of facts and issues, the court asked the parties to consider the applicability of the Commonwealth of the Northern Marianas Islands ("CNMI") case, *John Davis, Jr. v. Commonwealth Election Commission*, Case No. 1-12-CV-00001, 2012 WL

15

2411252 (D.N.M.I. June 26, 2012). In *Davis,* the plaintiff, sought judicial relief to permanently enjoin the chairperson and the executive director of the Commonwealth Election Commission ("CEC" or "the Commission") from denying him the right to vote on any initiative to amend or repeal Article XII of the Constitution of the Commonwealth of the Northern Mariana Islands ("Commonwealth" or "CNMI"). Article XII restricts ownership of permanent and long-term interests in real property within the Commonwealth to persons of Northern Marianas descent ("NMD"). In 1999, Article XVIII of the Commonwealth Constitution was amended to prohibit non-NMDs who otherwise are qualified voters from voting on initiatives to change Article XII.

Mr. John Davis, a person of non-NMD descent, who is otherwise qualified to vote in the Commonwealth, argued that the restriction to his right to vote violated his civil rights as guaranteed by the Fourteenth and Fifteenth Amendments of the United States Constitution. Chief Judge Ramona Manglona dismissed without prejudice a legally similar attack on registration and election procedures in the CNMI to those presented by the plaintiff here in Guam. Addressing whether the claims in Mr. John Davis' complaint were ripe for judicial review the court noted,

> A claim is "not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all[,]" or if it is "too speculative whether the problem [plaintiff] presents will ever need solving." *Texas v. United States*, 523 U.S. 296, 300, 302 (U.S. 1998) (internal citation omitted). However, "[w]here the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Reg'l Rail*, 419 U.S. at 143.

*Davis*, 2012 WL 2411252 at *6.

Chief Judge Manglona found that John Davis' claims were not ripe because no initiative was scheduled for the next election. The court held, "While [John] Davis may find it distressing to contemplate that under Commonwealth law, if an Article XII initiative gets on the ballot he

16

will not be permitted to vote on it, he suffers no hardship until an initiative is 'certainly impending.' " *Id.*, at *7. The same rationale is true of the Plaintiff's claims challenging a plebiscite in Guam. Until the plebiscite he seeks to register for is "certainly impending," he has no claim.

Here, just as in the CNMI case, there is no discernible future election in sight. Indeed, while Mr. Davis cites the fact that the plebiscite has been set and reset repeatedly as proof of hardship, what it actually demonstrates is just how uncertain it is as to exactly when a plebiscite will ever be held. To suffer a real discernible injury, any registration would have to be, by necessity, related to an election that is actually scheduled. *See Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 301 n.12 (1979) (The ripeness of an election law claim "depends not so much on the fact of past injury but on the prospect of its occurrence in an impending or future election."). Because the Plaintiff has not demonstrated that there is a real threat of the election occurring any time soon, the court hereby overrules the Plaintiff's objection and affirms the Magistrate Judge's report and recommendation.

## VI. CONCLUSION

Based on the discussion above, the court hereby accepts and adopts the Magistrate Judge's report and recommendation on this matter, and **GRANTS** the Defendant's Motion to Dismiss. Said dismissal is without prejudice.

The Plaintiff may bring this suit again before this court for consideration if and when the Plaintiff is able to demonstrate that the plebiscite will occur for certain any time soon.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
    **Chief Judge**
**Dated: Jan 09, 2013**