**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ARNOLD DAVIS, on behalf of himself and all others similarly situated, *Plaintiff-Appellant*, <br><br> v. <br><br> GUAM; GUAM ELECTION COMMISSION; ALICE M. TAIJERON; MARTHA C. RUTH; JOSEPH F. MESA; JOHNNY P. TAITANO; JOSHUA F. RENORIO; DONALD I. WEAKLEY; LEONARDO M. RAPADAS, *Defendants-Appellees*. | No. 13-15199 <br><br> D.C. No. 1:11-cv-00035 <br><br> OPINION |

Appeal from the United States District Court
for the District of Guam
Frances Tydingco-Gatewood, Chief District Judge,
Presiding

Argued and Submitted
August 27, 2014—Hagatna, Guam

Filed May 8, 2015

Before:  Mary M. Schroeder, Alex Kozinski, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Kozinski;
Dissent by Judge N.R. Smith

# SUMMARY[*]

## Civil Rights

The panel affirmed in part and reversed in part the district court's dismissal, on standing and ripeness grounds, of an action brought by a resident of Guam who is not eligible to vote in a plebiscite concerning Guam's future political relationship with the United States because he is not a Native Inhabitant.

Plaintiff alleged that Guam's Native Inhabitant classification is an unlawful proxy for race. Plaintiff sought a declaration that limiting registration to Native Inhabitants is unlawful, and an injunction against using any registry other than Guam's general voter registry in determining who is eligible to register for, and vote in, the plebiscite.

The panel held that plaintiff's challenge to Guam's registration restriction asserted a judicially cognizable injury that would be prevented or redressed if the district court were to grant his requested relief. Plaintiff therefore had Article III standing to pursue his challenge to Guam's alleged race-based registration classification. The panel further held that the claim was ripe because plaintiff alleged he was currently subjected to unlawful unequal treatment in the ongoing registration process.

The panel held that because plaintiff did not argue on appeal that the district court erred by dismissing his claim

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

against Leonardo Rapadas, the Attorney General of Guam, any claim of error was waived.

Dissenting, Judge N.R. Smith stated that given the speculative and remote course of events that stood between plaintiff and his contemplated injury, the matter was not ripe for adjudication, and the district court correctly dismissed plaintiff's complaint.

## COUNSEL

Douglas R. Cox, Scott P. Martin (argued) and Marisa C. Maleck, Gibson, Dunn & Crutcher LLP, Washington, D.C., Michael E. Rosman, Center for Individual Rights, Washington, D.C., Mun Su Park, Law Offices of Park and Associates, Tamuning, Guam and J. Christian Adams, Election Law Center, PLLC, Alexandria, Virginia for Plaintiff-Appellant.

Leonardo M. Rapadas, Attorney General, and Robert M. Weinberg, Assistant Attorney General (argued), Office of the Attorney General of Guam, Tamuning, Guam for Defendants-Appellees.

Meriem L. Hubbard, Joshua P. Thompson and Jonathan Wood, Pacific Legal Foundation, Sacramento, California for Amicus Curiae Pacific Legal Foundation.

Julian Aguon, Law Office of Julian Aguon, Hagatna, Guam for Amicus Curiae Anne Perez Hattori.

# OPINION

KOZINSKI, Circuit Judge:

Pursuant to a law passed by the Guam legislature, eligible "Native Inhabitants of Guam" may register to vote in a plebiscite concerning Guam's future political relationship with the United States. Guam will conduct the plebiscite if and when 70 percent of eligible Native Inhabitants register. Plaintiff Arnold Davis is a Guam resident who isn't eligible to register because he is not a Native Inhabitant. He alleges that Guam's Native Inhabitant classification is an unlawful proxy for race. At this stage, we must determine only whether Davis has standing to challenge the classification and whether his claims are ripe.

## I. BACKGROUND

Guam law directs the territory's Commission on Decolonization to "ascertain the intent of the Native Inhabitants of Guam as to their future political relationship with the United States of America." 1 Guam Code Ann. § 2105. The same law also provides for a "Political Status Plebiscite." *Id.* § 2110. The plebiscite would ask eligible Native Inhabitants to choose among three options: (1) "Independence," (2) "Free Association with the United States of America" or (3) "Statehood." *Id.* It would be conducted by Guam's Election Commission on the same day as a general election. *Id.* The Commission on Decolonization would then be required to transmit the plebiscite's results to the President, Congress and the United Nations as reflecting "the intent of the Native Inhabitants of Guam as to their future political relationship with the United States." *Id.* § 2105.

Guam will hold the plebiscite if and when 70 percent of all eligible Native Inhabitants[1] register with the Guam Decolonization Registry. 1 Guam Code Ann. § 2110; 3 Guam Code Ann. §§ 21000, 21003. Native Inhabitants aren't required to register, although some will be registered automatically unless they submit a written request not to be registered. 3 Guam Code Ann. § 21002.1. Guam reports that the 70 percent threshold isn't close to being met. Thus, Guam hasn't set a date for the plebiscite and perhaps never will.

Davis tried to register with the Decolonization Registry, but the application was rejected because Davis isn't a Native Inhabitant. Davis agrees he's not a Native Inhabitant but claims that the Native Inhabitant classification violates the Fifth, Fourteenth and Fifteenth Amendments, as well as the Voting Rights Act and the Guam Organic Act[2] because it is

---

[1] Guam law defines "Native Inhabitants" as persons who became U.S. citizens by virtue of the Guam Organic Act of 1950 and their descendants. 1 Guam Code Ann. § 2102. The Organic Act granted citizenship to three classes of persons: (1) Spanish subjects who inhabited Guam on April 11, 1899, when Spain ceded Guam to the United States in the Treaty of Paris (and their children); (2) persons who were born on Guam and resided there on April 11, 1899 (and their children); and (3) persons born on Guam on or after April 11, 1899, when Guam was subject to U.S. jurisdiction. *See* Organic Act of Guam, Pub. L. No. 630, 64 Stat. 384, 384 (Aug. 1, 1950).

[2] The Organic Act extends the rights afforded by several constitutional provisions to Guam, including the Fifth Amendment, the Equal Protection Clause of the Fourteenth Amendment and the Fifteenth Amendment. 48 U.S.C. § 1421b(u); *Guam* v. *Guerrero*, 290 F.3d 1210, 1214–15 (9th Cir. 2002). The Organic Act also contains its own anti-discrimination provisions. *See*, *e.g.*, 48 U.S.C. § 1421b(n). The Voting Rights Act applies to Guam, a U.S. territory. 52 U.S.C. § 10101(a)(1) (formerly 42 U.S.C. § 1971(a)(1)).

6                                DAVIS V. GUAM

a "proxy for race." Davis seeks a declaration that limiting registration to Native Inhabitants is unlawful, and an injunction against using any registry other than Guam's general voter registry in determining who's eligible to register for, and vote in, the plebiscite.

The district court held that Davis lacks standing and his claims are unripe. According to the district court, Davis hasn't been injured because "there is no discernible future election in sight." "To suffer a real discernible injury," the district court held, Guam's restriction on voter registration to Native Inhabitants "would have to be, by necessity, related to an election that is actually scheduled." We have jurisdiction pursuant to 28 U.S.C. § 1291 and review de novo. *Bova* v. *City of Medford*, 564 F.3d 1093, 1095 (9th Cir. 2009).

## II. STANDING AND RIPENESS

To "satisfy the standing requirements imposed by the 'case' or 'controversy' provision of Article III," Davis must show that he has suffered, or will imminently suffer, a "concrete and particularized" injury to a "judicially cognizable interest." *Bennett* v. *Spear*, 520 U.S. 154, 167 (1997); *see also Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). That injury must be "fairly traceable to the challenged action of the defendant[s]," and it must appear likely that the injury would be prevented or redressed by a favorable decision. *Bennett*, 520 U.S. at 167; *see also Allen* v. *Wright*, 468 U.S. 737, 751 (1984). When determining Article III standing we "accept as true all material allegations of the complaint" and "construe the complaint in favor of the complaining party." *Maya* v. *Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Warth* v. *Seldin*, 422 U.S. 490, 501 (1975)).

Guam law gives some of its voters the right to participate in a registration process that will determine whether a plebiscite will be held. Davis alleges that the law forbids him from participating on the basis of his race. Davis's allegation—that Guam law provides a benefit to a class of persons that it denies him—is "a type of personal injury [the Supreme Court has] long recognized as judicially cognizable." *Heckler* v. *Mathews*, 465 U.S. 728, 738 (1984). The plaintiff in *Mathews* challenged a provision of the Social Security Act that required certain male workers (but not female workers) to make a showing of dependency as a condition for receiving full spousal benefits. *Id.* at 731–35. The statute, however, "prevent[ed] a court from redressing this inequality by increasing the benefits payable to" the male workers. *Id.* at 739. Thus, the lawsuit couldn't have resulted in any tangible benefit to Mathews. The Supreme Court nevertheless held that Mathews had standing to challenge the provision because he sought to vindicate the "right to equal treatment," which isn't necessarily "coextensive with any substantive rights to the benefits denied the party discriminated against." *Id.*; *see also Allen*, 468 U.S. at 762; 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* §§ 3531.4 at 215–16, 3531.6 at 454–56 (3d ed. 2008). We read *Mathews* as holding that equal treatment under law is a judicially cognizable interest that satisfies the case or controversy requirement of Article III, even if it brings no tangible benefit to the party asserting it. Guam's alleged denial of equal treatment to Davis is thus a judicially cognizable injury.

Guam concedes that its law excludes Davis from the registration process because he's not a Native Inhabitant. It argues, however, that the Native Inhabitant classification can't injure Davis because the plebiscite is "not self executing

and effects no change in political status, right, benefit or privilege for any individual." But this contradicts *Mathews*, which held that unequal treatment is an injury even if curing the inequality has no tangible consequences. 465 U.S. at 739. Moreover, Guam understates the effect of any plebiscite that would be held if the registration threshold were triggered. After the plebiscite, the Commission on Decolonization would be required to transmit the results to the President, Congress and the United Nations, 1 Guam Code Ann. § 2105, thereby taking a public stance in favor of whatever outcome is favored by those voting in the plebiscite.[3] If the plebiscite is held, this would make it more likely that Guam's relationship to the United States would be altered to conform to that preferred outcome, rather than one of the other options presented in the plebiscite, or remaining a territory. This change will affect Davis, who doubtless has views as to whether a change is appropriate and, if so, what that change should be. Guam law thus does provide a tangible benefit to Native Inhabitants that Davis alleges he is unlawfully denied: the right to help determine whether a plebiscite is held. This is not unlike the right to participate in jury service, which may not be denied on a constitutionally unequal basis. *See Batson* v. *Kentucky*, 476 U.S. 79, 87 (1986) (citing *Carter* v.

---

[3] The U.S. House of Representatives, for one, has indicated that it has open ears. In a 1998 resolution, it acknowledged the Commission on Decolonization and "reaffirm[ed] its commitment to the United States citizens of Guam for increased self-government, consistent with self-determination for the people of Guam." H.R. Res. 494, 105th Cong., 144 Cong. Rec. 25922, 25922–23 (1998).

*Jury Comm'n of Greene Cnty.*, 396 U.S. 320, 329–30 (1970)).**[4]**

Davis's challenge to the Native Inhabitant classification is also ripe because he alleges he's currently being denied equal treatment under Guam law. The registration process is ongoing and Guam must hold the plebiscite if 70 percent of eligible Native Inhabitants register. By being excluded from the registration process, Davis claims he is unlawfully denied a right currently enjoyed by others: to help determine whether a plebiscite will be held. The ripeness question thus "coincides squarely with standing's injury in fact prong." *Bova*, 564 F.3d at 1096 (quoting *Thomas* v. *Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)); *see also* 13B *Federal Practice & Procedure* § 3531.12 at 163.

Guam maintains that its plebiscite law does not, in fact, violate Equal Protection, the Fifteenth Amendment or the Voting Rights Act. But we need not resolve these issues to determine whether Davis's claims satisfy the case or controversy requirement of Article III. These are merits questions, and standing doesn't "depend[] on the merits of the

---

[4] Although *Batson* involved a criminal defendant's challenge to his conviction, the Court reiterated its holding in *Carter* that when a state "den[ies] a person participation in jury service on account of his race, the [s]tate unconstitutionally discriminate[s] against the excluded juror." *Batson*, 476 U.S. at 87; *see also Carter*, 396 U.S. at 329 ("People excluded from juries because of their race are as much aggrieved as those indicted and tried by juries chosen under a system of racial exclusion."). Whether participation in Guam's registration process is "deemed a right, a privilege, or a duty," Guam must "hew to federal constitutional criteria" when determining who is eligible to register. *Id.* at 330.

10                    DAVIS V. GUAM

plaintiff's contention that particular conduct is illegal."
*Warth*, 422 U.S. at 500.

**CONCLUSION**

Davis's challenge to Guam's registration restriction
asserts a judicially cognizable injury that would be prevented
or redressed if the district court were to grant his requested
relief. Davis therefore has Article III standing to pursue his
challenge to Guam's alleged race-based registration
classification. The claim is ripe because Davis alleges he is
currently subject to unlawful unequal treatment in the
ongoing registration process. Therefore, we need not decide
whether any of the other injuries Davis alleges follow from
Guam's Native Inhabitant restriction would be sufficient to
confer standing independently. In particular, we express no
view as to whether the challenged law resulted in the type of
"stigmatizing" harm that we've held may be a judicially
cognizable injury in the Establishment Clause context. *See
Catholic League* v. *City & Cnty. of S.F.*, 624 F.3d 1043,
1052–53 (9th Cir. 2010) (en banc). Nor do we decide
whether an alleged violation of the Voting Rights Act is itself
a judicially cognizable injury.

In the district court, Davis also sought to enjoin Leonardo
Rapadas, the Attorney General of Guam, from enforcing a
provision of Guam's criminal law that makes it a crime for a
person who knows he's not a Native Inhabitant to register for
the plebiscite. *See* 3 Guam Code Ann. § 21009. The district
court held that Davis lacked standing to seek this injunction
because he had not "shown that he is subject to a genuine
threat of imminent prosecution." While Rapadas is still listed
as a nominal defendant on appeal, Davis doesn't argue that
the district court erred in dismissing this claim. Therefore,

any claim of error is waived. *See Wagner* v. *Cnty. of Maricopa*, 747 F.3d 1048, 1059 (9th Cir. 2013).

We decline Davis's suggestion that we reach the merits of his claims in the event we find his claims to be justiciable. Instead we leave it to the district court to consider the merits of Davis's non-waived claims in the first instance.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

**Appellees other than Rapadas shall pay costs on appeal. Rapadas shall recover his costs, if any, from Davis.**

N.R. SMITH, Circuit Judge, dissenting:

The majority holds that federal courts have jurisdiction in this case based on precedent not applicable to its decision. For that reason, I must dissent.

Currently Guam is an unincorporated, organized territory of the United States.[1] Guam's legislature found that the native inhabitants of Guam "have been subjected to incessant

---

[1] Guam became an "organized" territory after Congress enacted the Guam Organic Act in 1950, which granted the people of Guam United States citizenship and established institutions of local government. Guam is "unincorporated," because not all provisions of the U.S. Constitution apply to the territory. DOI Dep't of Insular Aff., Report on the State of the Islands (1997), http://www.doi.gov/oia/reports/Chapter-4-Guam.cfm (last visited Apr. 15, 2015).

control by external colonial powers" and have never been
afforded the right to self-determination as to their political
relationship with the United States. 1 Guam Code. Ann.
§ 2101. Therefore, in 2004, Guam's legislature enacted
1 Guam Code. Ann. § 2110. It provides:

> (a) The Guam Election Commission shall
> conduct a "Political Status Plebiscite", at
> which the following question, which shall be
> printed in both English and Chamorro, shall
> be asked of the eligible voters:
>
> In recognition of your right to
> self-determination, which of the following
> political status options do you favor? (Mark
> ONLY ONE):
>
> > 1. Independence ( )
> >
> > 2. Free Association with the United States
> > of America ( )
> >
> > 3. Statehood ( ).
>
> Person eligible to vote shall include those
> persons designated as Native Inhabitants of
> Guam, as defined within this Chapter of the
> Guam Code Annotated, who are eighteen (18)
> years of age or older on the date of the
> "Political Status Plebiscite" and are registered
> voters on Guam.
>
> The "Political Status Plebiscite" mandated in
> Subsection (a) of this Section shall be held on

a date of the General Election at which
seventy percent (70%) of the eligible voters,
pursuant to this Chapter, have been registered
as determined by the Guam Election
Commission.

From the plain language of the statute, it is apparent that
(1) the Guam legislature wants to gather the opinion of the
Native Inhabitants of Guam regarding political status options;
(2) to gather that opinion, the legislature scheduled a future
plebiscite (poll) asking for an indication of what political
status option is favored by such Native Inhabitants; and
(3) the poll will not occur unless seventy percent of the
Native Inhabitants of Guam register to be polled.

It is a fundamental principle that federal courts are courts
of limited jurisdiction, limited to deciding "cases" and
"controversies." U.S. Const. art. III, § 2. The Supreme Court
has repeatedly insisted that a case or controversy does not
exist, unless the plaintiff shows that "he has *sustained or is
immediately in danger of sustaining* some direct injury as the
result of the challenged official conduct." *City of L.A. v.
Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks
omitted) (emphasis added). The Court admonished that the
"injury or threat of injury must be *both real and immediate*,
not *conjectural or hypothetical*." *Id*. (internal quotation
marks omitted) (emphasis added). "[R]ipeness is peculiarly
a question of timing," and ripeness is particularly at issue
when a party seeks pre-enforcement review of a statute or
regulation. *Thomas v. Anchorage Equal Rights Com'n*,
220 F.3d 1134, 1138 (9th Cir. 2000). A "claim is not ripe for
adjudication if it rests upon contingent future events that may
not occur as anticipated, or indeed may not occur at all."
*Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009)

(quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). The Supreme Court has consistently held that the ripeness doctrine aims "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (internal quotation marks omitted). "Where a dispute hangs on future contingencies that may or may not occur, it may be too impermissibly speculative to present a justiciable controversy." *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) (internal quotation marks and citations omitted).

The district court found Davis's alleged injury was not ripe. "Although a district court's determination of federal subject matter jurisdiction is reviewed de novo, the district court's factual findings on jurisdictional issues must be accepted unless clearly erroneous." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (internal citations omitted). The district court conducted a hearing and then made certain factual findings as to the ripeness of Davis's claim. The district court found that: (1) there is no date currently set for the plebiscite; (2) "there is no discernible future election in sight"; (3) there is no "real threat of the election occurring any time soon"; (4) there is "little likelihood that the plebiscite will be scheduled any time in the near future"; (5) Davis's own statements actually support the conclusion that the "plebiscite is not likely to occur any time soon, or if at all"; (6) Davis had not "successfully argued [or] shown that he is presently threatened with or has already suffered any irreparable damage or injury because he cannot register for a plebiscite that is *more than likely not to occur*." The district court concluded that "until the plebiscite [Davis] seeks to register for is "certainly impending," that Davis had no claim.

The district court's factual findings are supported by the record. Davis does not challenge the findings as clearly erroneous. The majority does not hold the findings to be clearly erroneous. Applying the ripeness precedent to these findings, this controversy fails for ripeness. The inability to register for an opinion poll, that is not currently scheduled and unlikely to ever occur, is not a matter of "sufficient ripeness to establish a concrete case or controversy." *Thomas*, 473 U.S. at 579. Whether the plebiscite occurs is contingent on a series of events that have not yet occurred and may never occur. Thus, at this point, there is not a "realistic danger" that the plebiscite will occur. *Babbitt v. United Farm Workers Nat'l. Union*, 442 U.S. 289, 298 (1979). Our court's role is "neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). Davis's allegations of future injury are too speculative to be "of sufficient immediacy and reality" to satisfy the constitutional requirement of ripeness. *See In re Coleman*, 560 F.3d at 1005.[2] Thus, the matter is not ripe and our court has no jurisdiction.

---

[2] The Sixth Circuit appears to be the only Circuit that has directly addressed the question of when an alleged deprivation of voting rights is ripe. The court found the Constitution protects an individual's "fundamental right to vote *not the right to register to vote*." *Lawson v. Shelby Cnty.*, 211 F.3d 331, 336 (6th Cir. 2000) (emphasis added). Accordingly, the court found that the cause of action accrued on election day, "when [the plaintiffs] presented themselves at their polling station and were refused the right to vote," not when they were "notified that their registrations had been rejected" for refusing to provide social security numbers. *Id*. Unlike this case, the "vote" at issue in *Lawson* involved an actual election.

In its decision, the majority instead concludes that Davis has standing to challenge the plebiscite, not based on voting rights cases, but based on one's ability to seek Social Security benefits.[3]  In fact, the majority cites no precedent suggesting that forbidding Davis from registering for this plebiscite implicates the voting rights protected under the Constitution. The Fifteenth Amendment only applies to an "*election* in which public issues are *decided* or public officials *selected*." *Terry v. Adams*, 345 U.S. 461, 468 (1953) (emphasis added). Davis does not allege that he is being denied the right to register for an *election*.  Davis does not allege the plebiscite will select "candidates for public or party office."  *See* 52 U.S.C. § 10310(c).  Davis does not allege the plebiscite will change Guam's Constitution.  Davis does not allege the plebiscite will enact, amend, or repeal any statute.  Despite the language in the majority's opinion to the contrary, Davis does not allege the plebiscite will change the rights of Guam's citizens or that the plebiscite itself will *change* or *decide* Guam's political status in relationship with the United States.  Rather, the injury alleged by Davis is merely being denied the right to register to participate in an opinion poll that will likely never occur.  Clearly, the inability to register

---

[3] I note the majority also cites *Batson v. Kentucky*, 476 U.S. 79, 85–86 (1986) to support its position.  Op. 8.  However, in *Batson*, the United States Supreme Court held that a prosecutor's use of peremptory challenges based on race violates the Equal Protection Clause of the Fourteenth Amendment.  *Batson*, 476 U.S. at 85–86.  The Court's focus was protecting the defendant's *constitutional right to a trial by jury*.  *Id*. The Court found that the jury must be "indifferently chosen to secure the *defendant's right* under the Fourteenth Amendment."  *Id*. at 87 (internal quotation marks omitted) (emphasis added).  It is difficult to understand how the majority extrapolated the holding in this case to its conclusion that Davis's right to register for the plebiscite "is not unlike the right to participate in jury service, which may not be denied on a constitutionally unequal basis."  Op. 8.

for this opinion poll is not equivalent to being denied the right to register to vote in the type of vote contemplated and protected by the Constitution.

Even if prohibiting Davis from registering for the plebiscite were a violation of his voting rights, this case "involves too remote and abstract an inquiry for the proper exercise of the judicial function." *Texas v. United States*, 523 U.S. 296, 300 (1998). The plebiscite is not currently scheduled and as the district court found, it is not likely to *ever occur*! The condition precedent to even scheduling the opinion poll is obtaining the registration of seventy percent of the eligible voters. Failing to satisfy this requirement (an event that even Davis describes as a "mirage"), the poll will not take place. Yet, amazingly, the majority finds these circumstances present a case ripe for resolution.

The majority mistakenly suggests that *Heckler v. Mathews*, 465 U.S. 728 (1984) would apply.[4] However, in *Mathews*, there was no question that Social Security pension benefits *would be paid*. There was no uncertainty as to

---

[4] The plaintiff in *Mathews* claimed that he was subjected to unequal treatment as to Social Security benefits "solely because of his gender." *Mathews*, 465 U.S. at 738. Specifically, the plaintiff alleged that "as a nondependent man, he receiv[ed] fewer benefits than he would if he were a similarly situated woman." *Id.* The Court focused on two factors when determining the plaintiff had standing (1) his injury was concrete as "there was no doubt about the direct causal relationship between the government's alleged deprivation of appellee's right to equal protection and the personal injury appellee has suffered—denial of Social Security benefits solely on the basis of his gender"; (2) that he was denied equal treatment solely because of gender (a protected class). *Id.* at 739–40 & n.9. The court concluded that the plaintiff's standing did not depend on his ability to obtain increased Social Security benefits if he prevailed. *Id.* at 737.

application of the allegedly unconstitutional pension offset provision. Thus, there was no question the issue was ripe. Indeed, the Court was not asked to determine ripeness and the Court did not address ripeness. Rather, the issue before the Court was determining the plaintiff's standing. The Court was asked to answer the question of whether the plaintiff's standing was dependant on his ability to receive additional benefits if he prevailed. *See Mathews*, 465 U.S. at 735–38.

Thus, the majority's conclusion that this case is ripe is without precedent and ignores the district court's extensive factual findings as to ripeness. Can you imagine the hours the district court will now have to spend resolving Davis's many alleged claims, including claims of alleged unequal treatment under the Fourteenth Amendment, alleged stigmatizing harm under the Establishment Clause, alleged violations of the Voting Rights Act, even though this plebiscite will never occur?

Given the speculative and remote course of events that stands between Davis and his contemplated injury, this matter is not ripe for adjudication, and the district court correctly dismissed Davis's complaint.