

FILED
DISTRICT COURT OF GUAM

4:08 APR 08 2018

JEANNE G. QUINATA
CLERK OF COURT

# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| ARNOLD DAVIS, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>      vs.<br><br>GUAM, GUAM ELECTION COMMISSION, ALICE M. TAIJERON, MARTHA C. RUTH, JOSEPH F. MESA, JOHNNY P. TAITANO, JOSHUA F. RENORIO, DONALD I. WEAKLEY, and LEONARDO M. RAPADAS,<br><br>               Defendants. | CIVIL CASE NO. 11-00035<br><br><br>**DECISION AND ORDER<br>RE ATTORNEYS' FEES AND COSTS** |

Before the court is Plaintiff's Motion for Attorneys' Fees and Costs. *See* Pl.'s Mot., ECF No. 162. For the reasons stated herein, the court **GRANTS** the motion in part and **DENIES** the motion in part. The total award on Plaintiff's attorneys' fees and costs is **$947,717.39**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background have been thoroughly recounted in the court's order dated March 8, 2017. *See* Order, ECF No. 149. Accordingly, the court finds no reason to rehash this information herein.

1

## II.    DISCUSSION

### a.    Entitlement to Attorney Fees

This is a civil rights action that deals with the topic of self-determination of the political status of the island and who should have the right to vote on a referendum concerning such. Plaintiff—a white, non-Chamorro, male and resident of Guam—was prohibited from registering to vote on the referendum. This court determined the prohibition was a violation of the Fifteenth Amendment's prohibition of racial discrimination in voting and the Fourteenth Amendment's Equal Protection Clause. Because there was a clear violation of the Fifteenth and Fourteenth Amendments, the court found it unnecessary to address the statutory arguments presented by Plaintiff.

There are two federal statutes entitling Plaintiff to receive attorneys' fees: 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988(b). The Voting Rights Act provides in part that, "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." 52 U.S.C. § 10310(e).

Similarly, the Civil Rights Attorney's Fees Awards Act of 1976 (as amended) provides in part that, "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 [civil action for deprivation of rights] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b).

Defendants are not contesting that Plaintiff is the prevailing party for purposes of Plaintiff's motion on attorneys' fees or that Plaintiff is entitled to attorneys' fees. What is at issue is whether the attorneys' fees in the amount claimed are reasonable. *See* Defs.' Opp'n. at 7-8,[1]

---

[1] The page citations throughout this Order are based on the page numbering provided by the CM/ECF system.

ECF No. 172.

## b. **Standard**

The Supreme Court has found that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is known as the "lodestar figure," which is a "presumptively reasonable fee." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). And as the Supreme Court has previously held, the presumption is a "strong" one. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). The court may then adjust the lodestar figure upward or downward based on the factors set forth in *Kerr* that are not subsumed in the lodestar calculation.[2] *Gonzalez*, 729 F.3d at 1202.

The party applying for fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. The party opposing the fees "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).

The Ninth Circuit recognizes that because "awarding attorney's fees to prevailing parties in civil rights cases is a tedious business," the trial court "should normally grant the award in full" if the party opposing the fee request "cannot come up with specific reasons for reducing the

---

[2] The *Kerr* factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 950 (1976).

3

fee request." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1116 (9th Cir. 2008). At the same time, nothing compels a court to overlook ambiguities in a requesting party's supporting materials.

### c. **Reasonable Rates**

An established standard for determining a reasonable hourly rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted). The general rule is that the relevant community is the forum in which the district court sits. *Id.* However, rates from outside the forum may be used if local counsel was "unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir. 1992).

Plaintiff seeks a local rate of $250.00 for his local counsel on Guam, Mun Su Park; and Washington, D.C. rates for the following off island counsel: J. Christian Adams of Election Law Center; Michael E. Rosman, Christopher J. Hajec, and Michelle A. Scott of Center for Individual Rights; and Douglas R. Cox, Scott P. Martin, Marisa C. Maleck, Jason J. Mendro, Amir C. Tayrani, and Russell B. Balikian of Gibson, Dunn & Crutcher LLP. *See* Decl. of Adams at 9, ECF No. 162-1; Decl. of Park at 2, ECF No. 162-7; Decl. of Rosman at 3-4, ECF No. 162-9; and Decl. of Cox at 9, ECF No. 162-20.

Defendants argue that the relevant community is Guam so Guam rates should be applied for Plaintiff's Washington, D.C.-based attorneys. Defs.' Opp'n at 8-12, ECF No. 172. Defendants dispute Plaintiff's claim that there are no qualified attorneys on Guam willing to accept the case. *Id.* at 9. Defendants state that they contacted six law firms on Guam, who are "considered to be qualified to handle the Plebiscite litigation." *Id.*. Out of the six contacted, only

4

one indicated that it would have taken the case.[3] *See* Decl. of Sablan at 1-2, ECF No. 172-2. In addition, Defendants argue that the "local community" also includes the Commonwealth of the Mariana Islands ("CNMI"), relying on a dissenting opinion in *Guam Society of Obstetricians and Gynecologists v. Ada*, 100 F.3d 691 (9th Cir. 1996). *See* Opp'n at 10, ECF No. 172.

The court finds Defendants' argument unpersuasive. Other than a dissenting opinion, Defendants did not provide any binding legal authority to support their contention that "local community"[4] includes the neighboring islands of CNMI and that therefore, Plaintiff should have also checked with the CNMI bar members.

Moreover, Defendants rely on *Paeste v. Government of Guam*, 2013 WL 6254669 (9th Cir. Dec. 3, 2013), in support of their contention that Guam hourly rates should be used for Plaintiff's Washington, D.C.-based attorneys. That case is distinguishable. In *Paeste*, the Ninth Circuit found that the Guam rate was appropriate and rejected the application of San Francisco hourly rates, because there was no evidence that local counsel was either unwilling or unavailable. *Paeste*, 2013 WL 6254669, at *4. The only explanation for the requested San Francisco rates was a declaration stating that "given the complexity of the issues . . . and to maximize the potential for success in bringing a case to Court and prevailing . . . [,]" counsel determined to seek off-island counsel with experience in complex class action suits. *Id.* Counsel also made conclusory statements by theorizing that the reason why "no other attorneys stepped forward to represent the proposed class of taxpayers . . ." was because no one wanted to challenge the Governor of Guam. *Id.* The Ninth Circuit found these declarations to be insufficient and are not evidence to prove that local counsel was unwilling or unavailable. *Id.* at

---

[3] An attorney from another firm appears to have contradictory statements, first indicating that his law firm could have taken the case only to later state that he "declined to speculate as to whether or not the firm would have taken it in the first place." *See* Decl. of Sablan, at 2, ECF No. 172-2.

[4] The court will construe Defendants' reference to a "local community" as "relevant community" for purposes of the reasonable rate analysis.

3-4.

Unlike *Paeste*, Plaintiff in this case provided evidence to justify using rates from outside the Guam forum, by showing that local counsel was unavailable either because they are unwilling or unable to perform. Plaintiff himself contacted at least ten Guam attorneys by phone. Decl. of Davis at 2, ECF No. 162-6. It soon became apparent to him that no one was willing to represent him. *Id.* Davis stated that more than one attorney whom he contacted told him that it would be unlikely for him to find representation on Guam. *Id.* At least one attorney told Davis that accepting the case would be detrimental to his business as it would affect his relationship with local judges. *Id.*

Plaintiff's counsel, J. Christian Adams, contacted a total of 27 Guam attorneys in an effort to obtain local counsel. Decl. of Adams at 3, ECF No. 162-1. Adams spent several hours on long distance telephone calls to Guam bar members "attempting to ascertain the names of lawyers who may be willing to participate in the case as local counsel." *Id.* Adams then made appointments and personally met with lawyers on Guam over the course of a week. *Id.* In his attempt to secure a local counsel for this case, Adams declares:

> In not one single instance of these meetings in their offices on Guam with Guam Bar Association members with either significant experience in contested civil litigation in the United States District Court or with a measure of expertise in either elections or Guam politics, was the attorney willing to work on the case. In fact, some of these conversations became quickly uncomfortable for both myself and, from my perspective, from the Guam Bar Association member as I discussed plans to challenge the status plebiscite. For example, some members defended the plebiscite in these discussions and retaining these lawyers was not a realistic possibility.
> . . . [I]t became clear in these meetings that at least one member of the Guam Bar Association was even afraid to take the case. These fears were expressly shared with me by one lawyer. One local lawyer with offices in Hagatna told me, "I have to live here. I have an office building here," inferring that damage might inure to his person or property. The fears expressed to me by members of the Guam Bar Association ranged from fear of judges or officials viewing the attorney less favorably for their other clients, to sincere concerns about their safety and property if they took the case. . .

6

> Some lawyers I met who had significant litigation experience or a
> measure of expertise in Guam elections or politics became so
> visibly uncomfortable with the mention of a plebiscite challenge
> that I terminated the meeting. . .

*Id.* at 4. The unwillingness of Guam attorneys to take this case was also experienced by

Defendants themselves when a local law firm they contacted informed them that "they would not

have taken the case because of the political nature of the issues involved." *See* Decl. of Sablan at

2, ECF No. 172-2.

After speaking with Guam attorneys who rejected representation of Plaintiff, Adams did

not stop there. Adams inquired from them if they knew anyone else on Guam who might be

interested in taking the case. *See* Decl. of Adams at 3, ECF No. 175-1. Adams received

"befuddled and uncomfortable looks" and most of them declined to recommend an attorney. *Id.*

In addition to phone calls and in-person meetings, Adams also reached out to Guam attorneys by

email. *Id.*

While Defendants may have found one law firm on Guam willing to take the case, this

was all done in hindsight. It is unknown to this court what the law firm's response would have

been had they been asked prior to the commencement of the case, *not* by Government, but by

Plaintiff.

Based on the foregoing, the court finds that Plaintiff made reasonable efforts to find local

counsel but was faced with the unwillingness of Guam attorneys to represent him. When Plaintiff

was finally able to find local counsel willing to take the case, the local counsel lacked the degree

of experience, expertise, or specialization required to handle the case properly. *See* Decl. of Park

at 2, ECF No. 162-7. Accordingly, because of the unavailability of local counsel either because

they were unwilling or unable to perform, this court will depart from the forum-rate rule and

apply Washington, D.C. rates to Plaintiff's non-local counsel.

The Washington, D.C. rates that Plaintiff is seeking for his non-local counsel are the

hourly rates identified for the 2016-2017 rates in the U.S Attorneys' Office Matrix ("USAO Matrix"). Pl.'s Mot. at 18, ECF No. 162-24. Defendants do not argue that the USAO Matrix hourly rates are unreasonable for the Washington, D.C. legal community. Rather, Defendants only argue that the rates are unreasonable because the relevant community is Guam. The declarations by Sheldon Bradshaw and Bradley J. Schlozman support finding that Plaintiff's requested hourly rates using the USAO Matrix are reasonable if D.C. were the relevant community.

Bradshaw is a practicing attorney in Washington, D.C. He was formerly the Principal Deputy Assistant Attorney General in the Civil Rights Division at the U.S. Department of Justice ("DOJ"), wherein he had supervisory oversight of the Voting Section at DOJ. Decl. of Bradshaw at 3, ECF No. 162-3. Bradshaw stated that the use of the USAO Matrix in this case is an "extremely reasonable hourly rate based on [his] firsthand experience with hourly rates charged by attorneys in the [Washington, D.C.] area, especially so considering the nature of this case." *Id.* at 3-4.

Schlozman was a practicing attorney in Washington, D.C. He was formerly the Deputy Assistant Attorney General of the U.S. Department of Justice's Civil Rights Division, wherein among his responsibilities was the enforcement of election and voting rights laws. Decl. of Schlozman at 2-3, ECF No. 162-4. Schlozman stated that he considers the rates set forth in the USAO Matrix to "likely understate significantly the reasonable attorney fee hourly rate for a lawsuit of this magnitude, particularly in light of [his] firsthand experience of the hourly rates routinely charged by experienced voting rights practitioners in Washington D.C." *Id.* at 3 (emphasis omitted).

The court has no reason to believe otherwise that the use of the USAO Matrix in the Washington, D.C. area for a civil rights case such as this one is unreasonable. Accordingly, the

court will apply the 2016-2017[5] rates in the USAO Matrix. The Ninth Circuit has long "recognized that district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use of funds." *Gates*, 987 F.2d at 1406. However, the rates will be based on the experience level of the attorney at the time the work was performed. *See e.g.*, *South Yuba River Citizens League & Friends of River v. Nat'l Marine Fisheries Serv.*, 2012 WL 1038131, at *6 (E.D. Cal. Mar. 27, 2012).

| Attorney/Law Firm | Hourly Rate |
|---|---|
| Mun Su Park, Law Offices of Park and Associates | $250.00 |
| J. Christian Adams (Election Law Center, PLLC) | $516.00 (June 2011- May 2014) $543 (June 2014- May 2017) |
| Michael E. Rosman (Center for Individual Rights) | $543.00 (through May 31, 2015) $581.00 (from June 1, 2015) |
| Christopher J. Hajec (Center for Individual Rights) | $465.00 (through May 31, 2015) $516.00 (from June 1, 2015) |
| Michelle A. Scott (Center for Individual Rights) | $516.00 (through May 31, 2016) $543.00 (from June 1, 2016) |
| Douglas R. Cox (Gibson, Dunn & Crutcher LLP) | $581 |
| Scott P. Martin (Gibson, Dunn & Crutcher LLP) | $465 (2015-2016) $395 (2013-2014) |
| Marisa C. Maleck (Gibson, Dunn & Crutcher LLP) | $322 (2013-2014) |
| Jason J. Mendro (Gibson, Dunn & Crutcher LLP) | $465 |
| Amir C. Tayrani (Gibson, Dunn & Crutcher LLP) | $465 |
| Russell B. Balikian (Gibson, Dunn & Crutcher LLP) | $332 (2013-2014) |

---

[5] The case ended in 2017.

*See* Decl. of Adams at 9, ECF No. 162-1; Decl. of Park at 2, ECF No. 162-7; Decl. of Rosman at 3-4, ECF No. 162-9; Decl. of Cox at 9, ECF No. 162-20; and Ex. 4 to Decl. of Rosman at 12, ECF No. 162-10.

The Election Law Center utilized one paralegal with an hourly rate of $20, although it could have requested for the prescribed hourly rate under the USAO Matrix in Washington, D.C. *See* Decl. of Adams at 8-9, ECF No. 162-1. Gibson, Dunn & Crutcher LLP utilized three paralegals and two research librarians with an hourly rate of $157, which is the prescribed rate under the USAO Matrix in Washington, D.C., for paralegals and law clerks. *See* Decl. of Cox at 4, ECF No. 162-20; and Ex. 4 to Decl. of Rosman at 12, ECF No. 162-10.

### d. Reasonable Hours

Time is reasonably expended on the litigation when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Webb v. Bd. Of Educ. of Dyer County*, 471 U.S. 234, 242 (1985). Counsel has the burden to demonstrate that the number of hours spent was reasonably necessary to the litigation. *Hensley*, 461 U.S. at 437. Further, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended. *Id.* The court may reduce hours where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary. *Id.* at 433-34. The court may also reduce hours unreasonably spent, or where excessive time is spent on a particular task, or where there is redundant and/or ambiguity in the billing. *Id.*

### i. J. CHRISTIAN ADAMS, ELECTION LAW CENTER, PLLC

J. Christian Adams ("Adams") is claiming a total of 719 hours and 34 minutes. Pl.'s Mem. at 23, ECF No. 162-24.

### 1. Block Billing and Lack of Detail

Defendants object to Adams' billable hours due to the lack of detail and block billing.

Defs.' Opp'n, at 12, ECF No. 172. Defendants prepared a chart ("Exhibit A"), listing those entries that lack detail. *See* Ex. A to Decl. of Sablan at 5-7, ECF No. 172-2.

Pursuant to CVLR 54(c)(2)(A), there must be adequate description of the services rendered, so that the court can evaluate the reasonableness of the requested fees. The court agrees that some of Adams' billable hours lack detail and some entries were billed in block format. However, the court, having reviewed the docket sheet and the filings contained therein, and as discussed *infra*, was able to surmise with sufficient detail most of the tasks performed.

### a. Emails and Conversations

The court cross-referenced the email entries and telephone calls with co-counsel's billable hours, and it was able to determine the tasks performed.

For example, for the entry dated December 20, 2011, "email from cocounsel MR. Email to cocounsel MR," Ex. A to Decl. of Sablan at 5, ECF No. 172-2, a review of Mr. Rosman's entry reveals that the email conversation was in regard to Section 2 and foreign policy exclusivity. *See* Ex. 8 to Decl. of Rosman at 4, ECF No. 162-12. The December 29, 2011, "Conversation with Michael Rosman," Ex. A to Decl. of Sablan at 5, ECF No. 172-2, shows from Mr. Rosman's entry that the topic was on the opposition brief. *See* Ex. 8 to Decl. of Rosman at 4, ECF No. 162-12. The entry dated September 4, 2015, "Conversation with counsel MR," Ex. A to Decl. of Sablan at 6, ECF No. 172-2, pertains to status of class certification, summary judgment motion and arguments to be made thereon. *See* Ex. 13 to Decl. of Rosman at 4, ECF No. 162-17. The September 24, 2015 entry, "Emails from cocounsel . . . ," Ex. A to Decl. of Sablan at 6, ECF No. 172-2, pertains to the summary judgment motion. *See* Ex. 13 to Decl. of Rosman at 4, ECF No. 162-17. The December 4, 2015, "email to and from cocounsel," Ex. A to Decl. of Sablan at 6, ECF No. 172-2, pertains to correcting typos in the reply memo reviewed by Mr. Rosman. *See* Ex. 13 to Decl. of Rosman at 7, ECF No. 162-17.

There were other entries pertaining to emails and conversation with co-counsel which were not contained in Defendants' Exhibit A, but this court nonetheless reviewed and scrutinized. For example, emails on July 27, 2012, *see* Attach. A to Decl. of Adams at 5, ECF No. 162-2, pertain to discovery dispute and settlement. *See* Ex. 10 to Decl. of Rosman at 4, ECF No. 162-14. The entry dated November 5, 2015, "Discussion with cocounsel MR about case," Attach. A to Decl. of Adams at 8, ECF No. 162-2, pertains to the response to defendants' motion for summary judgment. *See* Ex. 13 to Decl. of Rosman at 5, ECF No. 162-17.

There were two entries of "email to and from client" without anything more (entries dated November 3, 2015, and November 23, 2015). Attach. A to Decl. of Adams at 8-9, ECF No. 162-2. However, the total time for these two entries is only 23 minutes, with the November 23, 2015, being billed for just three minutes. The court is well aware that it is counsel's obligation to keep his client apprised on the case and therefore finds these entries, even though lacking specific details, to be reasonable.

In Defendants' Exhibit A, Defendants list two entries, one billed for 20 minutes for an "[e]mail conversation with opposing counsel" on June 12, 2015, and the other for 44 minutes for a "[c]onversation with opposing counsel and cocounsel MR" on June 10, 2015. Ex. A to Decl. of Sablan at 6, ECF No. 172-2. It is expected and, in fact, highly encouraged, for opposing counsel to communicate and confer with each other so as not to waste the court's time as well as to try to move the case along. Accordingly, an hour and 4 minutes of communicating with opposing counsel, though unknown to this court as to what the conversation pertains to, is reasonable as counsel's efforts to attempt to resolve differences.

In another entry contained in Defendants' Exhibit A, Adams billed for 9 hours for "[t]elephone calls and emails to dozens of Guam contacts and potential witnesses. Telephone conversations with local lawyers. Gathering of documentary evidence and photographic

12

evidence. Research of Guam Dept. of Chamorro affairs[,]" on September 13, 2011. Ex. A to Decl. of Sablan at 5, ECF No. 172-2. While this entry was block billed and did not indicate the topic of the calls or emails, the court was able to surmise that these calls were in regard to trying to obtain local counsel. Adams stated that he spent "many hours on long distance telephone calls to members of the Guam Bar Association attempting to ascertain the names of lawyers who may be willing to participate in the case as local counsel." Decl. of Adams at 3, ECF No. 162-1. In total, Adams made 27 phone calls to Guam attorneys. *Id.* The court can easily see this task taking an entire day.

### b. Pleadings Preparation

As to the entries on preparation and/or legal research on the complaint, motion to dismiss, and motion for summary judgment, the court finds that while the entries lack the kind of specificity the court prefers, the court is intimately familiar with these pleadings and the relevant legal issues, and after a thorough review of the hours billed for these pleadings, the court finds the hours to be reasonable.

For example, in Plaintiff's motion for summary judgment, Adams spent a total of 84.37 hours[6] in "preparation" for summary judgment motion. Eighty-four hours in preparation of a summary judgment motion with 317 pages of exhibits is reasonable and not excessive to this court.

Adams spent a total of 30 hours and 52 minutes[7] in legal research and preparation of response to defendants' motion to dismiss. In addition, Adams spent a total of 30 hours and 24

---

[6] *See* entries dated 08/17/2015, 08/18/2015, 08/25/2015, 09/03/2015, 09/04/2015, 09/08/2015, 09/09/2015, 09/14/2015, 09/17/2015, 09/22/2015, 09/24/2015, 09/29/2015, 10/01/2015, 10/02/2015, 10/04/2015, 10/05/2015, 10/23/2015, 10/27/2015, 10/28/2015, 10/29/2015, and 10/30/2015. Attach. A to Decl. of Adams at 8, ECF No. 162-2.

[7] *See* entries dated 12/05/2011, 12/07/2011, 12/12/2011, 12/14/2011, 12/15/2011, 12/19/2011, 12/20/2011, 12/22/2011, 12/28/2011, 01/02/2012. Attach. A to Decl. of Adams at 3-4, ECF No. 162-2.

minutes[8] in hearing preparation. The motion is not one to be treated lightly, considering that it is a dispositive motion, which, if granted (and it was in fact granted), would terminate Plaintiff's case. Spending approximately 61 hours to properly defend a motion that could end Plaintiff's case is a very conservative number to this court.

The same reasoning and finding goes to the hours Adams spent on preparing a response to defendants' motion for summary judgment.

### c. Discovery and other work performed

Defendants object to other entries they claim lack detail. *See* Ex. A to Decl. of Sablan at 7, ECF No. 172-2. For example, they object to Adams' entry dated March 14, 2016, for 2 hours and 20 minutes, with the following description, "[p]reparation of discovery documents. Request for admission. Requests for production. Interrogatories." *Id.* Another example was an entry dated August 22, 2016, for six hours and 28 minutes, with the following description: "[p]reparation for summary judgment motion argument. *Id.*

These entries contain sufficient detail, and this court is able to determine that the hours spent on the described work is reasonable. It is enough for Plaintiff to identify at least the "general subject matter" of the entries and "plaintiff's counsel . . . is not required to record in great detail how each minute of his time was expended." *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004) (internal brackets and citations omitted).

Certainly, Adams could have done a better job recording his billable hours with more specificity. However, the court does not find his billable hours to be unreasonable as discussed above. In addition, the court notes that Adams did not bill for at least 73 hours of work on this case. *See* Decl. of Adams at 8, ECF No. 162-1.

---

[8] *See* entries dated 10/17/2012, 10/19/2012, 10/29/2012, 10/30/2012, 11/01/2012, 11/02/2012, 11/08/2012, 11/12/2012, 11/14/2012, and 11/15/2012. Attach. A to Decl. of Adams at 6-7, ECF No. 162-2.

## 2. Travel Time

Defendants object to Adams' travel hours and move the court to reduce the requested hours by at least 50 percent. Defs.' Opp'n. at 19-20, ECF No. 172. The court denies said request. The touchstone in determining whether hours have been properly claimed is reasonableness. The assessment of reasonableness is made by reference to standards established in dealings between paying clients and the private bar. *See Suzuki v. Yuen*, 678 F.2d 761, 764 (9th Cir. 1982). "When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling. That is why lawyers invariably charge their clients for travel time, and usually at the same rate they charge for other time[.]" *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984). District courts have long granted prevailing parties their full hourly rate for travel time. *E.g.*, *United States v. The City and Cnty. of San Francisco*, 748 F.Supp. 1416 (N.D. Cal. 1990); *Blackwell v. Foley*, 724 F.Supp.2d 1068 (N.D. Cal. 2010).

This court has first-hand experience in traveling from Guam to the East Coast, including Washington, D.C. Flights are typically longer than 20 hours. Although Adams is entitled to his full hourly rate for travel time, Adams discounted most of his travel time. For example, he only charged 15 hours on September 26, 2011, and September 15, 2012; 12 hours on September 22, 2012, November 13, 2012, and November 16, 2012; 8 hours on August 30, 2016; and 14 hours on September 2, 2016. *See* Attach. A to Decl. of Adams, ECF No. 162-2. The court also observes that the majority of his travel included Adams working on the case. Adams did not bill for the time he slept on the plane. Decl. of Adams at 3, ECF No. 175-1.

As to Adams' Saipan travel on September 24, 2011, the court does not believe that Adams double billed for this entry. There are two Saipan travel references on September 24, 2011. As there is no billed Saipan lodging expense and the airfare ticket shows the same date for

travel to and from Saipan, *see* Attach. D to Decl. of Adams at 2-3, ECF No. 162-5, the court

finds that the first reference was travel to Saipan from Guam, and the second reference was

travel back to Guam from Saipan that same day.

The court will not reduce Adams' travel time. The court is well-aware of the time it takes

to travel to Washington, D.C., from Guam, and the already-reduced travel hours billed by Adams

is reasonable.

### 3. Discovery

Defendants object to Plaintiff's approach in handling his case and questions whether his

actions were necessary.

For example, Defendants ask this court to cut the requested attorney fees to reflect the

excessive time spent on preparing and conducting depositions. In total, Defendants calculated

that Adams billed for approximately 120 hours for time spent preparing and taking depositions.[9]

*See* Defs.' Opp'n. at 23, ECF No. 172. The court reviewed the entries from August 28, 2012[10]

through September 21, 2012, and found that Adams spent a total of 90 hours and 24 minutes for

both deposition preparation and the actual taking of depositions.[11] Subtracting 27 hours billed

during the days when the depositions were taken (entries dated September 17, 2012; September

---

[9] Defendants argue that it is impossible to determine exactly how much time was spent on deposition preparation due to Adams' block billing. The court is not so much concerned with the block billing because Adams grouped these highly related tasks, *e.g.*, entry dated 09/02/2012, "[d]eposition prep. Review of evidence and organization of exhibits and deposition questions[,]" and this court does not believe Adams "padded" his time. In fact, he billed in real time (*e.g.* 3-minute phone call, instead of rounding it off and billing by every tenth or fifteenth of the hour), which is rare for this court to see.

[10] Defendants refer to "entries for 8/26/12 through 9/21/12," Defs.' Opp'n. at 23, ECF No. 172, but there is no August 26, 2012 entry so the court will be starting with the August 28, 2012 entry.

[11] *See* entries dated 08/28/2012 (1:45); 08/29/2012 (1:26); 09/02/2012 (8:00); 09/04/2012 (8:00); 09/07/2012 (5:40); 09/10/2012 (4:00); 09/11/2012 (2:23); 09/11/2012 (1:08); 09/12/2012 (8:00); 09/13/2012 (2:02); 09/17/2012 (10:00); 09/18/2012 (11:00); 09/19/2012 (10:00); 09/20/2012 (9:00); and 09/21/2012 (8:00). *See* Attach. A to Decl. of Adams. at 5-6, ECF No. 162-2. The court did not take into account the 15 hours in which Adams was traveling (entry dated 09/15/2012) and in which he prepared en route for the depositions. The court has already taken this 15 hours into account under the travel time.

20, 2012; and September 21, 2012), the preparation time is 63 hours and 24 minutes, which on average is a little over 10 hours of preparation per person/witness (as Defendants have noted in their opposition, there were six witnesses).[12] An average of 10 hours per person to prepare for a deposition is reasonable, particularly if it involved reviewing of evidence and exhibits, as is the case here.

In addition, Defendants argue that the depositions were not necessary because Plaintiff did not use any of the depositions taken (Ron McNinch, Ed Alvarez, and Robert Klitzke) in support of his summary judgment motion.[13] Defs.' Opp'n. at 22, ECF No. 172. Defendants also question the necessity of Plaintiff's written discovery after the case was remanded from the Ninth Circuit, also arguing that none of it was used in support of Plaintiff's summary judgment motion. *Id.* at 24. Defendants believed that Plaintiff could have filed his motion for summary judgment without further discovery *Id.* at 23-24.

The standard is not whether such discovery was used to support a particular motion. Rather, it is whether the work "at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect [the] client's interest in the pursuit of a successful recovery[.]" *Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 839 (9th Cir. 1982).

Here, Plaintiff conducted depositions and written discovery not necessarily for the exclusive use in support of his summary judgment motion. When Plaintiff conducted the discovery, both pre- and post-remand, the case was set for trial. *See* Scheduling Orders, ECF

---

[12] Only three depositions occurred because discovery was subsequently stayed pursuant to this court's order dated September 21, 2012. ECF No. 69.

[13] Defendants argue that the depositions of Michael Bevaqua, Jose Garrido, and Carl Gutierrez were also unnecessary. *See* Defs.' Opp'n. at 22, ECF No. 172. The court notes that depositions of these three individuals did not occur, and Plaintiff is not claiming for attorney fees on depositions that did not occur. *See* Attach. A to Decl. of Adams at 6, ECF No. 162-2 (entries dated 09/17/2012, 09/20/2012, and 09/21/2012, and cross-referenced with Attach. D to Decl. of Adams at 17, ECF No. 162-5).

Nos. 37 and 95. And as Plaintiff pointed out in his Reply, there was no way of him knowing that the trial would not proceed as scheduled. Pl.'s Reply at 15, ECF No. 175. A reasonable and prudent lawyer would take the necessary steps to prepare his case at every stage of the litigation. Whether it was the deposition taking or the written discovery that Plaintiff undertook, this court will not second guess Plaintiff's legal strategy. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (rejecting post-hoc scrutiny of prevailing party's strategy). This court will also not compare or expect Plaintiff to conduct zero depositions, simply because Defendants felt they did not need any.[14] Additionally, Plaintiff's written discovery took a day's worth of work—9 hours and 59 minutes[15]—which this court does not find to be excessive and is, in fact, minimal.

Defendants also argue that the court should exclude the time spent preparing a motion to compel that was never filed.[16] Defs.' Opp'n. at 25, ECF No. 172. Other than arguing that the motion to compel was unnecessary and that "the discovery upon which it was based was unnecessary[,]" *id.* at 25, Defendants presented nothing else. Defendants failed to cite to any legal authority that would support their assertion that time spent on a motion that was never filed should be excluded. The court reviewed Exhibit A of Kenneth Orcutt's Declaration (pages 7-43, ECF 172-1, Defendants' response to Plaintiff's second request for admissions, interrogatories and production), and this court finds it reasonable for Plaintiff to explore the possibility of a

---

[14] In their attempt to make a point that Plaintiff's discovery was excessive, Defendants pointed out that they conducted only two separate document-production requests, six interrogatories, and zero depositions. *See* Defs.' Opp'n. at 23, ECF No. 172.

[15] *See* entries dated 01/29/2016 (1:50); 03/14/2016 (2:20); 03/16/2016 (0:03); 03/16/2016 (2:00); 03/17/2016 (0:45); 03/18/2016 (0:30); 03/21/2016 (2:01); and 03/21/2016 (0:30). Attach. A to Decl. of Adams at 9-10, ECF No. 162-2.

[16] Defendants cited to a total of approximately 11 hours. Defs.' Opp'n. at 25, ECF No. 172. However, four hours of those were *not* spent on the motion preparation but rather, they were hours worked on opposing Defendants' own motion to compel. *See* Ex. 14 to Decl. of Rosman at 4, ECF No. 162-18 (entries dated 5/31/2016, "review defendants' papers in support of motion to compel…"; and 6/6/2016, "review and edit C. Adams draft of opp to motion to compel…").

motion to compel. In addition, this court will not second guess Plaintiff's legal strategy on whether to pursue a motion to compel or not. *See Moreno,* 534 F.3d at 1112.

### 4. Time Spent on reviewing *Davis v. Commonwealth Election Commission*

Defendants object to the time spent by Adams in reviewing the Ninth Circuit's opinion in *Davis v. Commonwealth Election Commission,* 844 F.3d 1087 (9th Cir. 2016). In total, Adams spent approximately 4 hours and 2 minutes[17] in reviewing the case, communicating with his co-counsel about the case, discussing the case with his client, communicating with the plaintiff's counsel in the *Davis v. Commonwealth Election Commission,* reviewing materials from the lower court (*e.g.,* district court's opinion and the complaint filed), researching local rules on new authority, drafting letter to the court about the Ninth Circuit's opinion, and reviewing the summary judgment motion and discussing with co-counsel on whether amendments or supplements should be made in light of the Ninth Circuit's opinion. *See* entries dated December 29, 2016, and January 3, 2017, Attach. A to Decl. of Adams at 11-12, ECF No. 162-2. Reviewing an eight-page opinion not only requires just plain reading of the opinion, but it also requires thoughtful and careful analysis of how this opinion would impact Plaintiff's case. Accordingly, the court finds that approximately four hours spent on reviewing *Davis* and other related tasks is reasonable.

### 5. Teleconferencing Entry

The court will reduce Adams' entry dated September 25, 2012, "Meeting with legal team about case (MR)," in light of Rosman's identical entry in which Rosman is only billing for 1.00 hour for their conversation. *See* Attach. A to Decl. of Adams at 6, ECF No. 162-2; Ex. 10 to Decl. of Rosman at 6, ECF No. 162-14.

---

[17] *See* Entries dated 12/29/2016 (3:10); 01/03/2017 (0:05); and 01/03/2017 (0:47). Attach. A to Decl. of Adams at 11-12, ECF No. 162-2.

19

| Date | Attorney | Description | Hours Claimed | Hours Approved |
|---|---|---|---|---|
| 09/25/2012 | Adams | Meeting with legal team about case (MR) | 2:00 | 1:00 |
| 09/25/2012 | Rosman | Mtg w/C. Adams, T. Pell, and C. Coates | 1.00 | 1.00 |

Based on the hour reduction, the court will reduce Adams' fee for September 25, 2012, as follows:

| Date | Description | Amount Claimed | Amount Approved |
|---|---|---|---|
| 09/25/2012 | Meeting with legal team about case (MR) | $516 x 2:00 = $1,032 | $516 x 1:00 = $516 |

### 6. Total Attorney Fees for Adams

| Years | Approved Rates | Approved Hours | Approved Amounts |
|---|---|---|---|
| June 2011-May 2014 | $516 | 448 hours and 54 minutes | $231,632.40 |
| June 2014-May 2017 | $543 | 269 hours and 40 minutes | $146,429.00 |
| TOTAL | | 718 hours and 34 minutes | $378,061.40 |

The total attorney fees awarded to Adams is **$378,061.40**.

### ii.  Mun Su Park, Law Offices of Park & Associates

#### 1. Discussion

Mun Su Park ("Park") is claiming a total of 113 hours. Pl.'s Mem. at 23, ECF No. 162-24.

Defendants object to three entries by Park, arguing that those entries lack detail. *See* Ex. A to Decl. of Sablan at 7, ECF No. 172-2. The entries at issue are "deposition arrangement/preparation" and "depositions preparation/arrangement" dated September 16, 18, and 19, 2012, for a total of 3 hours and 30 minutes. *Id.* As discussed *supra*, it is sufficient for Plaintiff to identify at least the general subject matter of the entries. *See Lytle v. Carl*, 382 F.3d at 989. Spending 3 hours and 30 minutes in deposition arrangements and preparation as the local

counsel for Plaintiff is reasonable to this court.

The court, however, will exclude the duplicative hours on deposition taking. Park is billing a total of 24 hours for deposition taking on September 17, 20, and 21, 2012. *See* Attach. A to Decl. of Park at 4, ECF No. 162-8. Adams conducted the depositions and had already billed for these hours. Park, on the other hand, "did not examine any witnesses, make any objections, or otherwise actively participate in the depositions." *See* Decl. of Weinberg at 2, ECF No. 172-4. The court expects that the overall lead attorney for Plaintiff, Adams, would have been sufficient to conduct the depositions on his own. *See Farris v. Cox*, 508 F.Supp. 222, 226 (N.D. Cal. 1981) (reduction of time where multiple attorneys attended depositions and hearings).

| Date | Entry Description | Hours Claimed | Revised Hours |
|------|-------------------|---------------|---------------|
| 09/17/2012 | Depositions | 8.0 | 0 |
| 09/20/2012 | depositions held in office | 8.0 | 0 |
| 09/21/2012 | depositions held in office | 8.0 | 0 |
| **TOTAL** | | **24** | **0** |

In addition, Defendants move the court to reduce Park's fee request by 50%. Defs.' Opp'n. at 26, ECF No. 172. They argue that Park "never charges less than 15 minutes for any task." *Id.* The court finds this to be an inaccurate statement. Park billed for less than 15 minutes on certain tasks he performed. *See* Attach. A to Decl. of Park at 8, ECF No. 162-8 (entries dated 8/29/2016, 8/31/2016, 9/02/2016, 9/14/2016, and 10/31/2016 were all billed as "0.1").

The court, however, will reduce the following hours as unreasonable because the tasks could have been easily performed in less than the time they were billed for. The court determined this by reviewing the entry and cross referencing such entry with the relevant docket filing.[18]

---

[18] For example, counsel has billed for reviewing a notice regarding the extension of time for the filing of an opposition to Defendants' motion to compel (*see* ECF No. 132) on June 2, 2016. The notice was two sentences long and should not have taken counsel more than 0.10 hours to review.

| Date | Entry Description | Hours Claimed | Revised Hours |
|---|---|---|---|
| 12/08/2011 | filed proposed order for extension of time to respond with mailing addresses | 0.5 | 0.3 |
| 01/05/2012 | review of certificate of service/scheduling notice | 0.25 | 0.2 |
| 02/01/2012 | review of court order referring motion to dismiss | 0.25 | 0.1 |
| 02/17/2012 | review of court order granting motion | 0.25 | 0.1 |
| 03/16/2012 | review of scheduling order | 0.25 | 0.1 |
| 04/06/2012 | review of order granting motion re amicus | 0.25 | 0.1 |
| 06/21/2013 | review of notice of ECF by 9th Circuit re copies of amicus brief | 0.25 | 0.1 |
| 07/06/2013 | review of notices of ECF, appeal transcript re transcript filed before chief and magistrate judge | 0.25 | 0.1 |
| 08/28/2013 | review of notices of ECF, appeal transcript | 0.25 | 0.1 |
| 10/07/2015 | review of orders on motions | 0.25 | 0.2 |
| 06/02/2016 | review of notice re motion to compel | 0.25 | 0.1 |
| 06/14/2016 | Review of notice from court re dates for summary judgment hearing | 0.25 | 0.1 |
| 08/26/2016 | Review of notice from court re hearing date and video recording | 0.25 | 0.1 |
| **TOTAL** | | **3.50** | **1.70** |

The court will also reduce the hourly rate for the non-legal work performed by Park on May 5, 2016, for 0.25 hours ("mailed out to lead counsel CDs from opposing counsel"). *See* Attach. A to Decl. of Park at 7, ECF No. 162-8. Non-legal work is not compensable at attorney rates. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).

| Date | Entry Description | Hours Claimed | Rate Claimed | Rate Approved |
|---|---|---|---|---|
| 05/05/2016 | mailed out to lead counsel CDs from opposing counsel | 0.25 | $250.00 | $20.00[19] |

Based on the discussion above, the court finds that Park's reduced hours are reasonable. Despite Defendants' argument that Park did "little other than 'review' documents[,]" Defs.'

---

[19] This rate is based on the paralegal hourly rate by Election Law Center, PLLC, which this court finds reasonable. *See* Decl. of Adams at 8, ECF No. 162-1.

Opp'n. at 26, ECF No. 172, the court finds that Park as the local counsel had a duty to "meaningfully participate in the preparation and trial of the case with the authority and responsibility to act as attorney of record for all purposes" at all times. Local Rule GNLR 17.1(e). Thus, reviewing filings and knowing both the procedural and substantive aspects of the case is Park's responsibility as the local counsel for Plaintiff. The court will not reduce Park's fee request by 50 percent.

In addition, the court notes that Park's billing is minimal. From 2011 to 2017 (approximately 5.5 years), Park has only billed for approximately a little over two weeks' worth of work.

### 2. Total Attorney Fees for Park

| Rate | Hours | Total |
|:---:|:---:|:---:|
| $250.00 | 86.95 | $21,737.50 |
| $20.00 | 0.25 | $5.00 |
| **TOTAL** | 87.20 | $21,742.50 |

The total attorney fees awarded to Park is **$21,742.50.**

### iii. Center for Individual Rights

The Center for Individual Rights ("CIR") is claiming a total of 453.3 hours. Pl.'s Mem. at 23, ECF No. 162-24. The CIR utilized three attorneys in this case: Michael E. Rosman ("Rosman"), Christopher J. Hajec, and Michelle A. Scott. *See* Decl. of Rosman at 3, ECF No. 162-9.

### 1. Lack of Detail

Defendants object to a total of 19 entries by CIR for lack of detail. *See* Ex. A to Decl. of Sablan at 7, ECF No. 172-2. The court reviewed these entries and found that four of these entries were similar to Adams', wherein Adams did not specify the topic of conversation with co-counsel Rosman. However, Defendants did not object to Adams' entries dated September 15, 2011; September 25, 2012; August 21, 2015; and January 29, 2016, for lack of detail. *Compare*

23

*id. with* Attach. A to Decl. of Adams, ECF No. 162-2. Presumably, Defendants found these entries of Adams to be acceptable "as is." This court will do likewise.

That leaves 15 entries in question, four of which this court was able to clearly determine based on cross referencing the entries between Rosman, Adams, and Cox. Rosman's entry dated December 5, 2011, "review of emails," pertains to the motion to dismiss. This entry was cross referenced with Adams' entry of December 5, 2011 (". . . Email to litigation team about motion to dismiss."). *See* Attach. A to Decl. of Adams at 3, ECF No. 162-2. The November 1, 2012 entry, "email exchange w/C. Adams," shows from Adams' entry that the work done was on the preparation for the motion to dismiss argument. *See id.* at 6. The email exchange between Rosman and Adams on October 21, 2015, was on the topic of extension. *See id.* at 8. As to Rosman's entry dated August 28, 2014, "disc. w/M. Scott & C. Hajec; tel call w/D Cox," the discussion was on the oral argument preparation. *See* Ex. 2 to Decl. of Cox at 21, ECF No. 162-22.

As for the rest of the entries, the court is able to surmise the general topic of the conversations based on the surrounding entries by counsel and his co-counsel Adams and Cox. These entries were also cross-referenced with the docket entries. For example, Defendants filed their motion to dismiss on December 2, 2011. *See* ECF No. 17. For the month of December 2011, Adams' work was focused on responding to the motion to dismiss. *See* Attach. A to Decl. of Adams at 3, ECF No. 162-2. Likewise, the CIR's work for the month of December 2011, was focused on researching arguments pertaining to the motion to dismiss. *See* Ex. 12 to Decl. of Rosman at 3-4, ECF No. 162-12, at 3-4. Thus, while Defendants object to the December 16, 2011 entry, "tel call w/C. Adam; review cases" for lack of detail, the record shows that the task performed was on the topic of opposing the motion to dismiss. This is also supported by Rosman's Reply Statement, wherein he indicated that based on the date of Defendants' motion to

dismiss and the date Plaintiff filed his opposition, it is reasonable to infer that Rosman was reading cases related to the motion to dismiss. Reply Statement of Rosman at 2, ECF No. 175-2.

The purpose of requiring detail is to ensure that the court is able to review whether a particular task is reasonable. The majority of the entries in question are billed at 0.10 or 0.20 hours, which are not exorbitant and which are reasonable time spent on communicating with co-counsel (all entries were on communicating with co-counsel either by email, telephone call, or meeting). The court recognizes the importance of conferring with co-counsel to ensure efficiency and avoid duplicative work and, therefore, it does not find these entries to be unreasonable.

Certainly, Rosman could have recorded his billable hours with more specificity. However, the court does not find that Rosman "padded" his billable hours. As the Ninth Circuit stated in *Moreno*, "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fees. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning." *Moreno*, 534 F.3d at 1112. Further, the court notes that the CIR did not bill for approximately 210 hours of work on this case. *See* Decl. of Rosman at 6, ECF No. 162-9.

## 2. Teleconferencing Entries

The court will reduce two of Rosman's entries dated December 29, 2011, and June 20, 2014, because when the entries were cross-referenced with entries from the co-counsel with whom Rosman conversed, their billable hour was less than Rosman's.

| Date | Attorney | Description | Hours Claimed | Hours Approved |
|------|----------|-------------|---------------|----------------|
| 12/29/2011 | Adams | Conversation with Michael Rosman | 0:20 | 0:20 |
| 12/29/2011 | Rosman | Tel call w/C. Adams discussing opp brief | 0.70 | 0.40 |

*See* Ex. 8 to Decl. of Rosman at 4, ECF No. 162-12; Attach. A to Decl. of Adams at 4, ECF No. 162-2.

25

| Date | Attorney | Description | Hours Claimed | Hours Approved |
|------|----------|-------------|---------------|----------------|
| 6/20/2014 | Rosman | Email exchanges re possible video appearance, oral argument; tel call w/D Cox re same | 0.70 | 0.25 |
| 6/20/2014 | Cox | Telephone conferences and emails regarding oral argument. | 0.25 | 0.25 |

*See* Ex. 12 to Decl. of Rosman at 7, ECF No. 162-16; Ex. 2 to Decl. of Cox at 19, ECF No. 162-22.

Based on the time reduction, the court will reduce Rosman's fee for December 29, 2011, and June 20, 2014, as follows:

| Date | Description | Amount Claimed | Amount Approved |
|------|-------------|----------------|-----------------|
| 12/29/2011 | Tel call w/C. Adams discussing opp brief | $543 x 0.70 = $380.10 | $543 x 0.40 = $217.20 |
| 6/20/2014 | Email exchanges re possible video appearance, oral argument; tel call w/D Cox re same | $543 x 0.70 = $380.10 | $543 x 0.25 = $135.75 |
| **TOTAL** | | $543 x 1.4 = $760.20 | $543 x 0.65 = $352.95 |

### 3. Total Attorney Fees for the CIR

| Attorney | Hours Claimed | Approved Hours | Approved Amounts |
|----------|---------------|----------------|------------------|
| Rosman | 324.50 | 323.75 | $181,215.05 |
| Scott | 97.20 | 97.20 | $51,005.70 |
| Hajec | 31.60 | 31.60 | $14,694.00 |
| **TOTAL** | **453.30** | **452.55** | **$246,914.75** |

*See* ECF No. 162-10, at 18.

The total attorney fees awarded to the CIR is **$246,914.75.**

### iv. Gibson, Dunn & Crutcher LLP

The law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn") is claiming a total of 587.5 hours. Pl.'s Mem. at 23, ECF No. 162-24. Gibson Dunn utilized three main attorneys in this case: Douglas R. Cox ("Cox"), Scott P. Martin ("Martin"), and Marisa C. Maleck ("Maleck"). *See* Decl. of Cox at 3-4, ECF No. 162-20. Two additional attorneys assisted in

preparing for oral argument and one additional attorney assisted in preparing the documentation necessary for the attorney fees motion. *Id.* at 4. Five legal staff members were also utilized: Mari Ann Buckwalter (research librarian), Sheila Enright (research librarian), Janine A. Hanrahan (paralegal), Kim L. Michael (paralegal), and Erica N. Oleszczuk (paralegal appellate specialist). *Id.* at 4.

### 1. Appellate Counsel and Reasonableness of Staffing

Defendants object to Plaintiff having hired a separate law firm—Gibson, Dunn & Crutcher LLP ("Gibson Dunn")—for appellate work, stating that it was not necessary. Defs.' Opp'n. at 17, ECF No. 172. They argue that using Gibson Dunn is an "overkill" and that the Election Law Center and the CIR both possess specialized knowledge in the area of civil rights and voting litigation. *Id.*

It is not unusual for litigants to hire an appellate counsel who has the necessary expertise in the appellate level.[20] Decl. of Cox at 9, ECF No. 162-20. After having lost in the trial level, Plaintiff sought the expertise of Gibson Dunn, who succeeded in similar cases, as it did in *Rice v. Cayetano*, 528 U.S. 495 (2000).[21] *Id.* Caselaw does not prohibit payment of attorney fees in cases where Plaintiff retained an appellate counsel. *See e.g.*, *Bishop v. Smith*, 112 F. Supp. 3d 1237, 1239 (N.D. Ok. 2015). Nor is it unusual to utilize a team of attorneys for appellate work, provided the work is not duplicative. *See id.* (three attorneys handled the appellate work, with each attorney having their own separate responsibilities).

Here, while it may initially appear that there was an "overstaffing and overkill" of attorneys at the appellate level, *see* Defs.' Opp'n. at 17, ECF No. 172, a thorough review of

---

[20] Cox has 31+ years of experience. Decl. of Cox at 9, ECF No. 162-20.

[21] *Rice* bears striking similarities to the instant case, as evidenced by this court's great reliance on the case in its decision on the motion for summary judgment. Cox played a principal role in *Rice*. Decl. of Cox at 3, ECF No. 162-20.

Gibson Dunn's billable hours shows otherwise. In analyzing the number of hours worked by each of the six Gibson Dunn attorneys involved in this case, lead appellate counsel Cox billed for approximately two weeks' worth of work only. ECF No. 9 at 162-20. Three others (Mendro, Tayrani and Balikian) billed a total of less than 30 hours. *Id.* And while there may have been five legal staff who worked on this case in the appellate level, which seems a lot, their combined hours only added up to a little over 40 hours, which is one week's worth of work for one person. *Id.* Thus, the court does not find the hours to be an "overkill."

Further, the court did not find inflated expenditure of time, unlike the court in *Spell v. McDaniel*, 852 F.2d 762 (4th Cir. 1988), which Defendants relied on to make their argument that Gibson Dunn's fees should be reduced. *See* Defs.' Opp'n. at 17, ECF No. 172. In fact, the hours being billed are less than the number of hours actually worked by the firm. Decl. of Cox at 9, ECF No. 162-20. Gibson Dunn is only seeking $215,489.75[22] in attorney fees. *Id.* at 2. This amount is deeply discounted by more than 50%, since the actual attorney fees incurred by Plaintiff with Gibson Dunn is $468,368.23. *Id.* Clearly, there is neither overkill nor overinflated expenditure of time billed.

### 2. Lack of Detail

Defendants object to multiple entries by Cox, Maleck, and Martin, arguing that they lack detail. Decl. of Saban at 8-10, ECF No. 172-2. While the court would have appreciated entries that are greater in detail, the court finds the current entries sufficient. The entries in question were compared to the other entries within the same timeframe as well as the appellate docket sheet from the Ninth Circuit, Ex. 1 to Cox Reply Decl. at 5-7, ECF No. 175-5, and this court was able to glean a sense of the tasks performed and assess the reasonableness of the hours billed. For

---

[22] The correct amount is actually $215,490.00. Gibson Dunn miscalculated the total amount by 25 cents. *See* Chart, ECF No. 162-20, at 9 (Cox's rate: $581 x 80.25 = $46,625.25, *not* $46,625.00).

example, the May 22, 2014 entry by Cox, "[r]eview and respond to emails" billed at 0.50 hours pertains to the "DNMI opinion and potential Rule 28(j)." *See* Ex. 2 to Decl. of Cox at 19, ECF No. 162-22).

To the extent that the court did not line-by-line mention each billing entry that Defendants have objected to, the court finds them reasonable. *See Gates*, 987 F.2d at 1400 ("As long as the district court supplies us with a sufficient understanding of the reasons for its decision . . . we will presume that the district court implicitly rejected those specific challenges to plaintiffs' billing judgment deductions that it did not expressly discuss in its order.").

### 3. Appellate work on standing issue and the underlying merits

Plaintiff appealed this court's dismissal of the case for lack of standing but also raised the underlying merits of the case. In a two-to-one decision, the Ninth Circuit ruled on the standing issue in favor of the Plaintiff but declined to rule on the underlying merits. As such, Defendants argue that Plaintiff should not be compensated for the work performed on the underlying merits. Defs.' Opp'n. at 18-19, ECF No. 172.

As Plaintiff pointed out, "[s]ince an appeal was going to be heard in any event, and the marginal cost of raising the merits was fairly low (especially in comparison to the effort it actually took to obtain summary judgment after remand, much less what a trial might have cost in time and money), it was perfectly reasonable for Plaintiff's attorneys to make the effort." Pl.'s Reply at 13, ECF No. 175. This court agrees.

Further, in determining whether an unsuccessful claim is compensable, "[f]irst, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. . . If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended.' If the plaintiff

obtained 'excellent results,' full compensation may be appropriate[.]" *O'Neal v. City of Seattle*, 66 F.3d 1064, 1068-69 (9th Cir. 1995) (citations omitted).

Although the Ninth Circuit declined to rule on the underlying merits, the issues raised by Plaintiff were not completely unrelated to Plaintiff's successful claim. Had Plaintiff not succeeded in the standing issue, his underlying claims would have never been addressed by this court.

### 4. Total Attorney Fees for Gibson Dunn

| Attorney | Hourly Rate | Hours Claimed | Amounts |
|---|---|---|---|
| Cox | $581 | 80.25 | $46,625.25 |
| Martin | 2015-2016: $465<br>2013-2014: $395 | 2.5<br>154.75 | $1,162.50<br>$61,126.25 |
| Maleck | $322 | 275 | $88,550.00 |
| Mendro | $465 | 5.5 | $2,557.50 |
| Tayrani | $465 | 4.0 | $1,860.00 |
| Balikian | $332 | 19 | $6,308.00 |
| paralegals & research librarians | $157 | 46.5 | $7,300.50 |
| **TOTAL** | | | $215,490.00 |

*See* Decl. of Cox at 9, ECF No. 162-20.

The total attorney fees awarded to Gibson Dunn is $215,490.00.

### v. Overstaffing

Defendants seek a reduced fee because they assert that the case is overstaffed. Defs.' Opp'n. at 15, ECF No. 172. At first glance, it may appear the case is overstaffed. There are four law firms and multiple lawyers involved. However, closer scrutiny shows otherwise.

At the trial level, there were only two main attorneys handling the case: Adams and Rosman. Adams is the lead attorney, while Rosman and his firm mainly focused on the drafting and filing of the complaint, the motion for class certification, and the motion for attorney fees. *See* Decl. of Rosman at 2, ECF No. 162-9. Two other attorneys assisted Rosman, but their contribution was minimal. Hajec billed for approximately 30 hours. Scott billed for less than 100

hours. *See* Ex. 6 to Decl. of Rosman at 18, ECF No. 162-10.

At the appellate level, there were three main attorneys responsible for the appellate work with the appellate lead counsel billing for approximately just 80 hours (*see supra* for detailed staffing discussion on Gibson Dunn).

This can hardly be considered overstaffing, particularly when the court considers the length of this litigation. The duration of the case lasted approximately 5.5 years, from the filing of the complaint to the granting of summary judgment in favor of Plaintiff. Along the way, the case was dismissed for lack of jurisdiction, appealed, and then remanded.

The case itself is complex, having touched on the Fourteenth and Fifteenth Amendments, the Voting Rights Act, Guam's Organic Act, and the long and unique history of the plebiscite and the political sensitivity of the case.

Defendants complain of duplicative tasks but could only point to entries of telephone conferences, emails and meetings among Plaintiff's attorneys as duplicative. *See* Defs.' Opp'n. at 16, ECF No. 172. The court does not find these to be duplicative tasks, but rather, they are tasks that avoid duplication and inefficiencies and are therefore reasonable. Communicating with co-counsel is expected to ensure everyone is on the same page. The court's review of the billable hours does not show excessive hours of calls and emails and meetings. Accordingly, the court finds no merit to Defendants' arguments.

### vi. Motion for Class Certification

It is well-settled that "a plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage." *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991).

Defendants argue that the motion was not necessary, because the injunctive and declaratory relief sought by Plaintiff would benefit all proposed class members. Defs.' Opp'n. at

1  24, ECF No. 172. Moreover, Defendants argue that the class certification was not successful,

2  because this court never ruled on the motion. *Id.*

3      The court did not decide on the motion for class certification because it opted to address

4  the dispositive motion first. Assuming *arguendo* that the motion was unsuccessful, the court

5  must make a two-part inquiry whether to award fees for said motion.

6      "First, the court asks whether the claims upon which the plaintiff failed to prevail were

7  related to the plaintiff's successful claims. If unrelated, the final fee award may not include time

8  expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then

9  the court must apply the second part of the analysis, in which the court evaluates the

10 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably

11 expended.' If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but

12 if only 'partial or limited success' was obtained, full compensation may be excessive." *O'neal v.*

13 *City of Seattle*, 66 F.3d 1064, 1068 (9th Cir. 1995) (citations omitted).

14     "Claims are related where they involve 'a common core of facts' or are 'based on related

15 legal theories.' . . . '[T]he test is whether relief sought on the unsuccessful claim is intended to

16 remedy a course of conduct entirely distinct and separate from the course of conduct that gave

17 rise to the injury upon which the relief granted is premised.'" *Id.* (citations omitted).

18     In the instant case, Plaintiff sought to certify the class to prevent the Government of

19 Guam from refusing otherwise qualified voters to register and vote in the political status

20 plebiscite. The motion itself was not a separate claim, but rather a method of pursuing Plaintiff's

21 ultimately successful claims. *See O'Neal*, 66 F.3d at 1069 (unsuccessful motion for class

22 certification, which was not considered a "claim," but a method of pursuing relief). Thus, the

23 class certification motion was related to Plaintiff's claims and therefore, Plaintiff is entitled to

24 attorney fees for the work performed on this motion.

### e. Costs

#### i. Adams' Business Class Airfare

Adams seeks reimbursement of four roundtrip airfare tickets from Washington, D.C. to Guam, in the amount of $23,372.14. *See* Attach. D to Decl. of Adams at 2, ECF No. 162-5. Defendants object to the business class airfare,[23] arguing that luxurious travel should not be reimbursable. Defs.' Opp'n. at 20, ECF No. 172. Although this court agrees that luxurious travel generally should not be reimbursable, the court recognizes the unique situation of traveling to Guam from the East Coast, with travel time of approximately 20 hours or more, and with limited flight schedule availability. In Adams' case, business travel saved time and money. For example, for the summary judgment hearing, Adams arrived less than 11 hours before the hearing and left Guam late in the afternoon that same day of the hearing. Decl. of Adams at 3, ECF No. 175-1. Traveling in business class allowed him to sleep on the plane just before the hearing. *Id.* For the other three working trips to Guam, the alternative for Adams was to arrive earlier on Guam than necessary and incur even more billable hours. *Id.* Such additional expenses would have also included lodging, meals, and transportation costs. Accordingly, based on Guam's location and its distance from Washington, D.C., the court will approve the full amount of $23,372.14 for his airfare tickets.

#### ii. Expert Fees

Plaintiff seeks reimbursement in the amount of $3,525 for fees paid to his expert, Tom Brunell, PhD. *See* Attach. D to Decl. of Adams at 16, ECF No. 162-5. Defendants argue such fees are not compensable. Defs.' Opp'n. at 27, ECF No. 172. Defendants' argument has no merit. Section 10310(e) of Title 52, United States Code (Voting Rights Act), allows for reasonable

---

[23] Adams did not fly business class throughout. His airfare from Tokyo to Guam was in coach. Reply Decl. of Adams at 3, ECF No. 175-1.

expert fees. The fees requested herein are reasonable[24] and therefore, the court awards $3,525 in expert fees.

### iii. Non-taxable costs

Plaintiff seeks recovery of litigation expenses such as postage and shipping fees, meals, travel costs, and legal research. An award of expenses should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

### 1. Election Law Center, PLLC

The Election Law Center seeks reimbursement of non-taxable costs in the amount of $25,764.87. Pl.'s Mem. at 23, ECF No. 162-24. This amount includes $600 expense for paralegal work. *Id.* at 23 n.7; *see also* Attach. A to Decl. of Adams at 12, ECF No. 162-2.

Defendants object to the amount of non-taxable costs and argues that the non-taxable costs recoverable should only be approximately $11,764. Defs.' Opp'n. at 30, ECF No. 172. Defendants based this amount by reducing the roundtrip airfares from over $23,000 to $9,600, and by eliminating the expert fees of $3,525 as non recoverable. *Id.* This amount, however, does not amount to approximately $11,764.

Regardless, the court has ruled on the issues of business travel and expert fees,[25] as discussed above. Accordingly, the court grants the full amount of $25,764.87 as non-taxable costs for the Election Law Center, PLLC. *See* Attach. D to Decl. of Adams at 2, ECF No. 162-5 for the breakdown.

---

[24] Dr. Brunell's hourly rate is $300, and he billed for 11.75 hours. *See* Attach. D to Decl. of Adams at 16, ECF No. 162-5. The court also reviewed the expert report he prepared, which was used by Plaintiff in support of his summary judgment motion. *See* Ex. D1 to Statement, ECF No. 105-5.

[25] The expert fees in the amount of $3,525 is separately awarded from the rest of the Election Law Center's non-taxable costs.

### 2. Law Offices of Park and Associates

The Law Offices of Park and Associates seeks reimbursement of non-taxable costs in the amount of $246.65. Pl.'s Mem. at 24, ECF No. 162-24. This amount consists of $240 for "Park's messenger" billed at $40 per hour for 6 hours; and $6.65 in mailing expenses for sending discovery materials to co-counsel.[26] Decl. of Park at 3, ECF No. 162-7. Defendants object to this amount and argue that Park should be paid $0 in non-taxable costs.[27]

The court agrees, in part, with Defendants. Park has not provided any explanation that would justify payment of $240 for a messenger. There is no information provided as to what work was performed by the messenger for 6 hours. It is counsel's burden to provide the court with adequate description of costs. *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 333-34 (3d Cir. 1998) (an attorney submitting an application for attorney fees and expenses has the burden of establishing entitlement to such monies). Accordingly, the amount of $240 is denied.

The court, however, grants the amount of $6.65 as non-taxable costs for the Law Offices of Park and Associates.

### 3. Center for Individual Rights

The CIR seeks reimbursement of non-taxable costs in the amount of $250.00. Pl.'s Mem. at 24, ECF No. 162-24. This amount represents the fee paid for Rosman's admission *pro hac vice*. Decl. of Rosman at 7, ECFC No. 162-9. Defendants do not object to this amount. Defs.' Opp'n. at 31, ECF No. 172. Accordingly, the court grants $250.00 of non-taxable costs for the CIR.

---

[26] Park also included in his request the amount of $120 for fees for service of summons and subpoena. *See* Decl. of Park at 3, ECF No. 162-7. This amount will not be paid as a non-taxable cost, but rather as taxable cost under a separate order.

[27] Defendants have included the $6.65 postage fee as taxable cost. *See* Defs.' Opp'n. at 28, ECF No. 172 ("Mr. Park should be awarded taxable costs of $126.65 . . .").

#### 4. Gibson, Dunn & Crutcher LLP

Gibson Dunn seeks reimbursement of non-taxable costs in the amount of $24,802.43. Pl.'s Mem. at 23, ECF No. 162-24. Defendants object to this amount, arguing that Gibson Dunn's computer legal research is excessive, the "in house" duplication is unjustified, and the $472 shipping costs do not identify the shipped items. Defs.' Opp'n. at 29, ECF No. 172.

The court finds all these expenses to be reasonable. The computer legal research performed by Maleck were all on issues relevant to the appeal. *See* Reply Statement of Cox at 5, ECF No. 175-4. The "in house" duplication charges were from Gibson Dunn's on-site copy center, which prepares copies of the briefs for court filing, prepare binders for moots and oral arguments, and other similar projects. *Id.* These are typical costs incurred by a paying client.

As for the unidentified materials that were shipped, Gibson Dunn provided a copy of three shipping labels, which describes the contents as "DOCUMENTS" sent by Martin from Guam to an Angelina Walker at the Gibson Dunn office in Washington, D.C. *See* Ex. 2 to Reply Statement of Cox at 2-9, ECF No. 175-6. The shipping labels were dated in August 2014. *Id.* Thus, it can be inferred that these documents were related to the oral argument before the Ninth Circuit, which was held on Guam in August 2014.

#### f. Attorneys' Fees and Costs incurred after April 4, 2017

Plaintiff seeks an additional $30,884.30 of attorney fees that were incurred after April 4, 2017. Pl.'s Reply at 16, ECF No. 175. The breakdown of this amount is as follows:

| Attorney | Hourly Rate | Hours | Amount |
|----------|-------------|-------|--------|
| Rosman | $581.00 | 23.80 | $13,827.80 |
| Cox | $581.00 | 14.50 | $8,424.50 |
| Balikian | $332.00 | 26.00 | $8,632.00 |

*Id.*; Reply Statement of Rosman at 5, ECF No. 175-2; Reply Statement of Cox at 7, ECF No.

175-4. In addition, Plaintiff seeks an additional non-taxable cost in the amount of $275.49 for legal research. Pl.'s Reply at 16, ECF No. 175; Reply Statement of Cox at 8, ECF No. 175-4, Ex. 3 to Reply Statement of Cox at 8, ECF No. 175-7.

Reasonable fees and costs associated with the pursuit of attorneys' fees are generally recoverable. *McGrath v. County of Nevada*, 67 F.3d 248, 253 (9th Cir. 1995) (citation omitted). This court reviewed the additional billable hours submitted by Rosman and Cox. The hours billed reflect the work performed on the original fee application that were not included in the original request and additional work as a result of Defendants' opposition to the motion for attorneys' fees and costs. *See* Ex. A to Reply Statement of Rosman at 3-5, ECF No. 175-3; Ex. 3 to Reply Statement of Cox at 2-7, ECF No. 175-7. The court notes that Rosman also did not bill for 15.10 hours. *See* Ex. A to Reply Statement of Rosman at 5, ECF No. 175-3.

After having reviewed the additional request and supporting documentation, the court finds the requested attorneys' fees and costs to be reasonable and therefore grants the request.

**g. Lodestar Adjustment**

After the determination of the lodestar figure, the court may then adjust the figure upward or downward based on the factors set forth in *Kerr* that are not subsumed in the lodestar calculation. *Gonzalez*, 729 F.3d at 1202.

The court has already considered several of the *Kerr* factors in calculating the lodestar figure, such as the undesirability as well as the complexity of the case; the experience, reputation and ability of the attorneys and their fees; the results obtained; and the time and labor required. As such, the court finds no reason to depart or adjust the lodestar figure. The court also notes that Plaintiff does not seek an upward adjustment to the lodestar figure. Pl.'s Mem. at 15, ECF No. 162-24.

### III.  CONCLUSION

Prior to Plaintiff suing the Government of Guam on his own, he made every effort to avoid costs by first filing a complaint with the U.S. Department of Justice ("DOJ"), in the hope that DOJ would take action on his behalf. *See* Decl. of Davis at 2, ECF No. 162-6.  However, when it became clear that no action will be taken,[28] Plaintiff was compelled to seek private representation. *Id.*  Ironically, however, in DOJ's filing of the amicus curiae, DOJ stated that it "has substantial responsibility for the enforcement of the CRA and Section 2 of the VRA, which prohibit racial discrimination in voting. *See* 52 U.S.C. 10101(c), 10308(d).  Because these statutes ban conduct that may also violate the Fourteenth and Fifteenth Amendments, the United States similarly has an interest in ensuring the proper interpretation of these amendments." *See* Docket No. 21, Case No. 17-15719 (9th Circuit).  Had DOJ taken on this "substantial responsibility" in 2009, when Plaintiff first filed a complaint with DOJ, the attorneys' fees and costs in the instant case would likely not have been incurred.

This case has not been an easy one for counsel to represent. Due to the highly political nature of the case, it was almost impossible for Plaintiff to find local counsel. This was demonstrated by Plaintiff when he and Adams contacted a total of 37 attorneys, all of whom declined representation for various reasons—some defended the plebiscite; others feared for their safety and property if they took on the case; and many were afraid that public officials and judges would view them less favorable if they were associated in preventing the plebiscite. This court itself witnessed firsthand the emotions running high in its courtroom and outside of the courthouse as members of the public demonstrated their constitutionally protected right to protest. For local counsel Mun Su Park to take on the case when no one else would is

---

[28] The court notes that DOJ decided to intervene at the appellate level when it filed an *amicus curiae* on November 28, 2017, supporting Plaintiff-Appellee and urging the Ninth Circuit to affirm this court's granting of summary judgment in favor of Plaintiff. *See* Docket No. 21, Case No. 17-15719 (9th Circuit).

commendable.

With a few exceptions as noted above, the court finds that the requested fees are reasonable and certainly, there is no "padding" of billable hours by counsel. Counsel themselves did not bill for all the work performed in this case. For example, J. Christian Adams of the Election Law Center did not bill for at least 73 hours of work. In addition, Adams billed in real time, instead of billing by every tenth or fifteenth of the hour, which is rare for this court to see. Michael E. Rosman and his team from the Center for Individual Rights did not bill for approximately 210 hours. Douglas R. Cox and his team from the law firm of Gibson, Dunn and Crutcher billed for only $215,489.75, a more than 50% discount from the full billable amount of $468,368.23. Park himself billed for a little over two weeks' worth of work for a case that lasted for over five years. Reasonable billing judgments were exercised by all of Plaintiff's counsel. The court also notes that counsel could have asked for a lodestar upward adjustment but declined to do so.

In sum, in this sensitive and highly political-in-nature case, Plaintiff's billing judgment—both for attorneys' fees and costs—demonstrates an extra ordinary dedication to containment of cost and renews this court's faith in conscientious billing practices.

With the limited exceptions described above, the court finds that the remaining costs and fees requested by Plaintiff reasonable and shall be awarded as follows:

| Law Firm | Attorney Fees |
|---|---|
| Law Offices of Park and Associates | $21,742.50 |
| Election Law Center, PLLC | $378,061.40 |
| Center for Individual Rights | $260,742.55[29] |
| Gibson, Dunn & Crutcher LLP | $232,546.50[30] |
| **TOTAL ATTORNEYS' FEES** | **$893,092.95** |

| Law Firm | Non-taxable Costs |
|---|---|

[29] The sum of $246,914.75 and $13,827.80.

[30] The sum of $215,490.00, $8,632.00 and $8,424.50.

| | |
|---|---|
| Law Offices of Park and Associates | $6.65 |
| Election Law Center, PLLC | $25,764.87 |
| Center for Individual Rights | $250 |
| Gibson, Dunn & Crutcher LLP | $25,077.92[31] |
| **TOTAL NON-TAXABLE COSTS** | **$51,099.44** |

| Other Expenses | Amount Awarded |
|---|---|
| Expert Fees for Tom Brunell, PhD | $3,525 |

The total award on Plaintiff's attorneys' fees and costs is **$947,717.39**.

**SO ORDERED** this 8th day of April, 2019.

FRANCES M. TYDINGCO-GATEWOOD
Chief Judge

---

[31] The sum of $24,802.43 and 275.49.